IN

# THE SUPREME COURT

OF

# THE STATE OF MISSOURI,

JULY TERM, 1865, AT JEFFERSON CITY.

————◄●●●►————

BARBARA SCHULTZ, Plaintiff in Error, *v.* THE PACIFIC RAIL-
ROAD, Defendant in Error.

*Damages—Loss of Life.*—Under the second section of the "Act for the better
security of life and property," (R. C. 1855, p. 647,) the representatives of
a servant can maintain an action against the master, if the death be occa-
sioned by the negligence, unskillfulness or criminal intent of a fellow-
servant. The burden of proof is upon the plaintiff to show negligence in
such cases.

*Error to Cole Circuit Court.*

Plaintiff, as the widow, brought her action under the
statute for the better security of life, property and charac-
ter. The petition alleged that plaintiff's husband received
an injury, of which he died, resulting from the negligence,
unskillfulness and criminal intent of the officers, agents,
servants and employees of defendant while running, con-
ducting and managing the locomotive and cars on its rail-
road near the city of Jefferson. The answer alleged that
plaintiff's husband was a fellow-servant of the servants and
employees of defendant, who were running the cars at the
time the collision (causing the death) occurred.

2—VOL. XXXVI.

Plaintiff offered evidence sustaining. or tending to sustain the allegations of the petition, that the collision of the cars resulted from gross negligence or criminal intent of Harrington, who had charge of the engine and locomotive when this collision happened. It also appeared that Schultz, the husband of plaintiff, was a day laborer, employed and paid by the day; that at the time of the collision he, with other laborers, was on a wood train, which was ascending the road with wood brought from a point some miles below Jefferson City, and when within about half a mile from the latter place the train came in contact with a locomotive descending the track from the dépôt at Jefferson, in charge of Harrington.

The evidence shows that Harrington had been in the constant employment of the company for a year or two; that Schultz was an occasional and irregular laborer, employed by the day.

When the evidence was closed, plaintiff asked the following instructions:

1. If the jury believe from the evidence that Benedict Schultz was the husband of this plaintiff, and that the said husband of plaintiff died within six months before the commencement of this suit, from injuries resulting from a collision which took place, in the county of Cole, between a locomotive of defendant descending its railroad from its dépôt in the city of Jefferson, and a locomotive car and train of said defendant, on which was plaintiff's husband, at the time and by the consent of its conductor, which was ascending said road toward Jefferson City; and that said collision was occasioned by the negligence, unskillfulness or criminal intent of an officer, servant or employee of defendant, whilst running, conducting and managing said locomotive so .descending said road, then the jury will find for the plaintiff, and will return a verdict for five thousand dollars.

2. If the jury believe from the evidence that the plaintiff's husband died from injuries resulting from a collision of

the locomotive and cars of defendant, whilst an officer, servant or employee of defendant was running, conducting and managing the locomotive which was descending the said road as stated in first instruction, this is presumptive proof of negligence, and it devolves upon the defendant to show that it was chargeable with no default.

3. The jury will determine from all the evidence whether the servant or employee of defendant, while running, conducting and managing the locomotive which came in collision with the train ascending the said road, exercised the care and foresight of a prudent man; and the absence or want of such care and foresight is what is meant by negligence, as used in the first instruction.

All of which were objected to by defendant, and were refused by the court. To the opinion of the court in sustaining the objection and refusing instructions, the plaintiff excepted.

The court, at the request of the defendant, gave the following instructions:

1. If the jury shall believe from the evidence that Benedict Schultz was the husband of plaintiff, and was, at the time of the collision on the road of defendant, a servant or employee of defendant, and that the death of said Benedict Schultz was caused by the act of Harrington, and that said Harrington was at said time also a servant or employee of defendant, then the jury will find for the defendant, unless the jury shall further believe from the evidence before them that said Harrington was an incompetent servant or employee, and that the defendant failed to exercise ordinary care in his selection.

2. The defendant is not responsible for injuries to its servants or employees resulting from the act of a fellow-servant or employee, unless the servant committing such injury be incompetent to fill the position in which he may be employed, and that the railroad company failed to exercise ordinary care in his selection.

3. It devolves upon the plaintiff to show that Harrington was an incompetent servant or employee in the particular department in which he may have been employed, or in which he may have been engaged, and that the railroad company, in the selection and appointment of said Harrington, failed to exercise ordinary care.

4. It is not sufficient to entitle the plaintiff to recover, for her to show that the death of Schultz was caused by any act of Harrington, willful or with a criminal intent or otherwise, if the jury shall believe that both Harrington and Schultz were, at the time of the injury, servants or employees of defendant, unless they shall further find from the evidence that the injury resulted from the act of Harrington, and that said Harrington was an incompetent servant, not qualified to discharge the duties which devolved upon him; and further, that defendant in the selection of said Harrington did not exercise ordinary diligence.

5. That although the jury may believe from the evidence that the fireman Harrington may have run the engine below the wood-yard and water-tank of defendant, and that such act was contrary to the rule and custom of defendant, and was improper in itself, and that the death of plaintiff resulted from his carelessness or negligence in so doing, yet such unauthorized act of said fireman Harrington does not render the defendant liable to plaintiff in damages for the loss of her husband, unless the jury shall further find from the evidence that said Harrington was an incompetent servant, and that the company failed to exercise ordinary care in his selection and appointment; provided the jury shall further find that said Schultz was, at the time of his death, a servant of defendant and in its employ.

6. No particular length of service, nor any specified or agreed term of hiring or employment, is necessary to constitute Schultz a servant or employee of defendant; nor is it necessary for defendant to prove that Schultz was in any particular class of employees or servants to exonerate defendant from liability for injuries received by him from a

fellow-servant, whilst both such servants were in the actual employment of defendant.

To the opinion of the court in overruling the objection of plaintiff and giving said instructions, plaintiff excepted. The plaintiff thereupon took a non-suit and filed a motion to set aside the judgment and for a new trial.

*Ewing & Muir*, for plaintiff in error.

I. The case of McDermott v. The Pacific Railroad is unlike the case at bar. The defendant is liable at common law according to the following authorities: Gillenwater v. Madison & Ind. R.R., 5 Porter, Ind., 340; Fitzpatrick v. New Albany & Salem R.R., 7 Ind., 436; Chamberlain v. Mil. & Miss. R.R., 11 Wis. 250; Ohio St. R. 210; 20 Ohio, 415.

II. This action is clearly maintainable under the statute if not at common law, and the authorities cited by counsel for defendant do not apply. (1 R. C. 1855, p. 647.) This is evident from the terms of the second section, as well as from the scope and meaning of the whole act. The words are, " Whenever any person shall die from any injury resulting from or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive car or train of cars," &c. Another clause of same section says: " When any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad or any part thereof, or in any locomotive or car, &c., the corporation or individual in whose employ such officer, agent, &c., shall be, or who owns such railroad, locomotive, car," &c., " shall forfeit and pay for every person or passenger so dying," &c.

The restrictive terms of the last clause limiting the liability of company to injury received by passengers, show what is meant by the phrase " every person," in the first clause; and that the intent of the Legislature in enacting this law, was to embrace employees as well as passengers. The use of general and comprehensive terms in one clause, and of the

restricted terms in another part of the same section, clearly shows that the mind of the law-maker discriminated between classes of persons, and that the words of the act were used in the distinctive sense their ordinary and obvious import would imply. If passengers, only, were intended in the first part of the section, why were the terms " any person" used to express that intent, when, as in another part of the same section, in creating a liability for injuries to passengers caused by other agencies, it was necessary to express the intent by using the term "passengers "?

There are but two classes who are comprehended by the act, and who travel on railroads—passengers and employees ; and as employees are excluded from the benefit of the second clause referred to, because the law expressly limits the liability as to passengers only, so the employees must be held to be comprehended in the first clause, because its terms clearly include them under the designation of " any person." The third sustains the interpretation we have given of the second section. In the third, a right of action is given for injuries caused by other agencies than railroad employees, &c., provided an action could have been maintained by the injured party (if death had not ensued) before the passage of this statute, &c., at common law. The cause of action must have been good at common law under that section, and the statute only says the action shall not abate by the death of party injured, and that the surviving wife or husband, father or mother, &c., as the case may be, may sue, and that certain damages may be recovered. In other words, its provisions related only to the remedy. In the second section there is no such qualification as to the cause of action.

If there was no liability by the company for injuries caused to one servant by the negligence of his fellow-servant at common law, then the second section of this statute creates such a liability. There are obvious reasons, too, for such a distinction in the great risk and peril in which human life is placed by the agencies mentioned in the second sec-

tion, and the absence of any means on the part of passengers, as well as most employees, to avert danger and guard against such perils. The Legislature wisely ignored any distinction between passengers and those who, although employees of railroad companies, &c., are in most cases as little cognizant of the conduct, qualifications or habits of other employees of the same company as passengers, and are entitled at least to equal, if not greater, protection.

The interpretation of the statute insisted upon is sustained by all sound rules of construction. The intent of the law-maker must be sought for in the words, and when the intent is apparent on the face of the act—when there is no obscurity in the meaning, obscurity must never be created by construction. (31 Har. R. 72 ; Smith's Com. 822.) It is not admissible to restrain the operation of a statute within narrower limits than the words import, unless the court are satisfied that the literal meaning of its words would extend to cases which the Legislature never designed to include in it. (14 Peters' R. 178 ; Smith's Com. 822.)

When the Legislature have used words of definite import, it would be dangerous to put upon them a construction which would amount to holding that the Legislature did not mean what they had clearly expressed. The fittest course in all cases where the intention is brought in question, is to adhere to the words of the statute, construing them according to their nature and import, in the order in which they stand in the act, rather than enter upon an inquiry as to the supposed intention. (Smith's Com. 831.) Neither are courts to presume the intention of the Legislature, but they are to collect it from the words of the act. Applying the rules governing in the construction of penal statutes, (to which class the one under consideration does not in any proper sense belong,) the same conclusion must follow.

Penal statutes, although construed strictly, are not to be construed so strictly as to defeat the obvious intention of the Legislature ; and the words are not to be so narrowed down

as to exclude cases which those words in the ordinary adap-
tation, or in that sense in which the Legislature obviously
used them, would comprehend. (5 Wheat. 76 to 94; Smith's
Com. 810.)   The rule only means this, that they ought not
to be extended by their spirit or equity to other offences
than those which are clearly prescribed or provided for.
(Smith's Com. 841 ; see U. S. v. Winn ; 3 Sum. 211, &
Smith's Com. 845, a case directly in point.)

The cases cited by counsel for defendant in error, so far
as they involved the construction of statutes, had reference
to statutes that only gave a remedy to certain surviving rela-
tives of the deceased when a cause of action previously ex-
isted, and could be maintained at common law; and are like
the provisions of the third section of our statutes, but
wholly dissimilar from the second section. (Pierce, Rail. 257,
n. 1, 258–9, 260–61, notes.)

The general doctrine insisted on by defendant in error has
been applied to the construction of statutes, which have been
enacted in England and the United States, giving to the per-
sonal representatives of a deceased party, who was killed by
the carelessness or willfulness of another, a right to recover
damages of the wrong-doer, whenever the death is caused by
acts, neglects, &c., which are such if death had not ensued,
the injured party would have been entitled to recover dama-
ges for the injury.   (Pierce, Rail. 293, and authorities there
cited ; Sherman v. ——— R.R., 15 Barb. 574 ; 20 *id.* 449 ;
Pierce, Railw. 260, n. 1, as to careful discrimination in stat-
utes of other States giving remedies in similar cases to sur-
viving relatives, between employees and passengers.)

For the foregoing reasons the first instruction asked by
plaintiff should have been given, and all those given for de-
fendant should have been refused.

The second instruction of plaintiff was a proper declara-
tion of law. (Pierce, Railw. 493, and authorities there cited,
as is also the third instruction.   (Redfield, Railw. 323, *et
seq.*)

The case was submitted for defendant, upon a brief previously filed by Attorney General Welsh, since deceased.

*Welch*, for defendant in error.

I. A railroad company is not responsible in damages for an injury received by one servant at the hands of another, unless the servant by whose negligence the injury is occasioned is not possessed of ordinary skill and capacity in the business entrusted to him, and the employment of such incompetent servant is attributable to the want of ordinary care on the part of the company. (McDermott v. Pacific R.R., 30 Mo. 115; Priestly v. Fowler, 3 Mees & Wels, 1; Murray v. So. Car. R.R., 1 McMullen, 385; Farwell v. Boston & Worcester R.R., 4 Metcalf, 49; Hayes v. Western R.R., 3 Cush. 270; Coon v. Syracuse & Utica R.R., 6 Barb. 231; *ibid.* 3 Comst.)

II. This rule is not restricted to servants employed in the same particular class or kind of business, but applies to all servants in the employ of the same employer. (McDermott v. Pacific R.R., 30 Mo. 115; Redfield, Railw. 387; Farwell v. Boston & Wor. R.R., 4 Metc. 49.)

HOLMES, Judge, delivered the opinion of the court.

The petition sets forth a cause of action founded upon the second section of "An act for the better security of life, property and character," first enacted in this State in the year 1855. (R. C. 1855, p. 647.) This section, so far as it may have a bearing upon the present case, provides that whenever any person shall die from any injury, resulting from, or occasioned by, the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car, or train of cars; * * and when any passenger shall die from any injury resulting from, or occasioned by any defect or insufficiency in any railroad, or any part thereof, or in any locomotive or car; * * the corporation, individual or individuals, in whose employ any such officer, agent, servant,

employee, &c., shall be, at the time such injury is committed, or who owns any such railroad, locomotive, car, &c., at the time any injury is received, resulting from, or occasioned by any defect or insufficiency above declared, shall forfeit and pay for every person or passenger so dying, the sum of five thousand dollars." That these damages may be sued for and recovered by the husband or wife of the deceased, among other representatives particularly designated; and that "in suits under this section, it shall be competent for the defendant for his defence to show that the defect or insufficiency named in this section was not of a negligent defect or insufficiency."

The rhetorical construction here is somewhat careless, involved, and obscure; but upon a close examination it would seem to be sufficiently clear that the true intent and meaning of the act as it reads is, that when any person whatever shall die from any injury occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car, or train of cars; or whenever any passenger shall die from any injury occasioned by any defect or insufficiency in the railroad itself, or in any part thereof, or in any locomotive or car, the corporation or individual in whose employ such officer, agent, servant or employee shall be at the time the injury is committed, (that is, if the case be of a person dying from an injury occasioned by the negligence, unskillfulness, or criminal intent mentioned in the first clause,) or the corporation or individual who owns any such railroad, locomotive or car, at the time an injury resulting in death is occasioned, by any defect or insufficiency in the railroad, or any part thereof, or in any locomotive or car, shall, in either case, forfeit and pay the sum named, for the benefit of the designated representatives of the deceased party.

Since the introduction of these new and hazardous modes of travel, which require unusual care, diligence and skill on the part of the officers, agents and servants, who are en-

trusted with the management and control of moving trains and dangerous machinery, and with the performance of the various duties and services belonging to the details of combined operations, wherein the utmost faithfulness and certainty are demanded, the numerous and frequent disasters to life and limb which have happened, and are constantly happening—whether by the negligence or incompetency of the persons employed, or by reason of defective machinery or insufficient construction, or mere unavoidable accident—the natural and inevitable result and consequence of the adoption and use of these more dangerous means of carrying on the ordinary business of life have led communities in many States to conceive that there ought to be some greater security for life and property in these cases, and some more adequate compensation and redress for injuries suffered in this way, than has been heretofore attainable by the ancient principles of the common law alone; and at the same time, in many of those instances in which the common law has afforded an ample remedy, it has been felt that there was need that the sympathies and extravagances of inconsiderate juries, not unfrequently resulting in unreasonable and inordinate damages, should be controlled by some limitation and restraint. To what extent it may be wise or politic to modify the settled rules of law in order to adapt them to these new exigencies, it belongs to the Legislature, and not to the courts, to determine and prescribe.

We may observe, however, that some changes have been made by statute in other States and countries. The British statute, commonly called Lord Denman's Act, (9 & 10 Vic., ch. 93,) provided merely that an action might be maintained by certain personal representatives of the deceased party for damages, to be proportioned to the injury resulting to such representatives from the death of the injured person, where no action otherwise could have been sustained at common law by reason of the death of the party; but it did not in any way change or modify the grounds of the liability. This act, with more or less of alteration in minor de-

tails, in some instances has been substantially adopted in several States of the Union. In New York and New Hampshire, the damages are restricted (as in our act) to the sum of five thousand dollars in all cases. Under the Massachusetts statute, the remedy is by indictment for a penalty, which goes to the widow and heirs, not as compensation or damages for any supposed injury to them personally, but rather as a gratuity from the commonwealth: and it is expressly confined to cases of the death of " a person, being a passenger." The statute of New Hampshire is also strictly limited in its operation to persons " not in the employment of the corporation," or individual defendant. (Pierce's American R. Law, 260, n. 1). The third section of our statute is almost literally copied from the British act; and, like that act, it does not change or affect the common law principles constituting the original ground of the liability ; but this second section goes much further, and makes several important changes in the law not contained in any of the statutes of other States which we have had an opportunity to examine. They will demand a particular consideration.

There can be no doubt that the second clause of this second section, beginning with the words "and when any passenger," refers exclusively to passengers carried as such, and includes only injuries resulting in death occasioned by some defect or insufficiency in the railroad, or some part thereof, or in some locomotive or car.

In this respect, and so far as the principles of law governing the liability are concerned, it makes no change in the previous law of carriers of passengers. Common carriers are insurers of goods against every thing but the act of God and public enemies, but they are not insurers of the personal safety of passengers; and they are liable only for want of due care, diligence and skill, being responsible for the slightest neglect. (2 Greenl. Ev. sec. 221; Bennett v. Dalton, 10 New Hamp. 481.) They are not liable for injuries happening to passengers by mere accident. (Ang. Carr.

§ 521.) But carriers by railroads, as by coaches or other vehicles, are held responsible for the good travelling order and condition of the road, the sufficiency of the construction of the road and its rolling machinery, and the road-worthiness of engines, cars, and carriages; and they are liable at common law for deficiencies and insufficiencies in these repects. (Ang. Carr. § 538.) This part of the act amounts to no more than an express recognition of the same principles in reference to the ground of the liability; but it proceeds further to limit the recovery of damages to five thousand dollars, to designate the personal representatives of the injured person who may maintain an action, and to provide that the defendant may show in his defence, that such defect or insufficiency was not the result of negligence on his part. Here again the act merely recognizes the general rule of law; for this provision is in accordance with a principle of the law of carriers of passengers, applicable to them in their character and relation of common carriers, namely: that although the bare fact of an injury received by a passenger will not be sufficient to warrant a presumption of negligence, yet when an injury is proved to have resulted to a passenger from the breaking of defective machinery, insufficiency of construction, or other like accident occurring to moving trains—that is to say, causes which are of such a nature as of themselves to import and imply some negligent defect or insufficiency in the railroad or its running machinery—a presumption of negligence arises which is deemed sufficient to throw the burden of proof upon the defendant to show that the requisite care and diligence have been duly exercised. (Pierce's Am. R. Law, 492–3.) And so this clause makes the fact of the death of a passenger, resulting from such defect or insufficiency, to have the effect of being *prima facie* evidence of negligence. When these facts are made to appear, the burden of proof is, by force of the statute, shifted upon the defendant, and he is allowed to show in his defence, that there was no negligence on his part in those

particulars, and that the utmost care and diligence have been used.

But this part of the act, it is very plain, does not reach the case in hand : for the injured person here was not a passenger ; and, in reference to him, the defendant did not stand in the relation of carrier and passenger, but in that of master and servant. Nor does he appear to have been injured in that particular way.

Now, looking to the first clause of the section in question, we see that it begins with the words, " whenever any person," and there are no words in the section which can have any effect to limit the description or character of the person so dying to any class. The next clause opens with a change of language and subject, and a change of the ground of liability from negligence, unskillfulness or criminal intent, in officers, agents and employees, to defects or insufficiencies in the railroad or its running machinery ; and in the closing sentence which fixes the amount of the damages, the words " person or passenger" are both used, and disjunctively. But the negligence, unskillfulness or criminal intent for which the employer is to be held liable in this manner, is expressly confined to some officer, agent, servant or employee, whilst running, conducting or managing a locomotive, car, or train of cars ; and, of course, this part of the act can be applied to the negligence, unskillfulness or criminal intent of no other persons and to no other state of facts.

The framer of the act evidently undertook to carry two distinct propositions, concerning two classes of persons, and relating to two different and distinct grounds of liability, through one lengthy period ; and, as he proceeded, found it necessary to infold and involve them in an alternate series of expressions, which are applicable separately to each in their order, at some expense of rhetorical clearness and precision, but winding up with one and the same conclusion as to both, the prescribed penalty of five thousand dollars damages. Consequently, when the liability of the employer is declared

Schultz v. Pacific Railroad.

in reference to the first clause, it is the corporation or individual " in whose employ any such officer, agent, servant or employee," shall be at the time the injury is committed, that is to be liable, and plainly in respect of the negligence, unskillfulness or criminal intent of such officer, agent, servant or employee, whilst running, conducting, or managing the engines, cars, or trains ; but when the other clause relating to passengers only, becomes the subject of the sentence, it is the corporation or individual who owns the railroad, locomotive, car, or train, in which the defect or insufficiency which is then the ground of the liability, may exist, that is declared to be liable.

The obscurity which alone creates any difficulty in the interpretation of the act, arises from a certain ambiguity in the grammatical construction, whereby it is made possible to read the phrase " resulting from or occasioned by any defect or insufficiency above declared," as applying to and qualifying both members of the preceding sentence, and as thus limiting the whole liability, which is affirmed in the section, to the second clause alone, grounded on a defect or insufficiency in the road or its machinery.  This construction would render the whole of the first clause of the section entirely nugatory, and it cannot be allowed.  It is a maxim governing the construction of statutes, that the intent and meaning of the Legislature, to be gathered partly from the words and partly from the mischief which the statute was intended to remove, is to be taken as the controlling rule of interpretation, and even penal statutes are not to be so strictly construed as to defeat the obvious intention of the Legislature.  (Smith's Com., § 703 ; United States v. Witburgher, 5 Wheat. 95 ; United States v. Winn, 3 Sum. 211.) This intent, indeed, is to be collected from the language of the act ; but the difficulty here arises not so much from any want of adequate expressions covering and containing the construction and sense we have given to it, as from a possible interpretation, which, if adopted, would have the effect to contradict the express words of a part of the act, render

one entire clause wholly inoperative, and defeat the manifest object and intent of the Legislature. Such forced construction would be too dangerous to be admitted. (Smith's Com., § 715.)

We must conclude, then, that the true purport of the statute is, that whenever any person whatever, whether a passenger or an employee, a fellow-servant or a mere stranger, shall die from any injury which is occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing the engines and train, the employer who stands in the relation to them of master and servant, employer and employee, at the time of the injury, shall be liable, without more, to the representatives of the injured person in the liquidated sum of five thousand dollars damages, and no more.

This amounts to an application and extension of the principle of *respondeat superior* to the corporation or individual employer, in all cases of persons dying from an injury of this kind and coming within the purview of the act, by the direct force and operation of the statute itself, independent of the common law rules heretofore governing the liability of the defendant in this class of cases. Of the wisdom, justice or policy of the act we are not to judge; it is enough for us that it is so enacted, and it is our simple and plain duty to declare the law as we find it.

The defence in this case proceeded on the assumption that the statute had made no change in the law as it stood before the passage of the act, in respect of the liability of the defendant to answer in damages for an injury occasioned by the negligence of a servant resulting in the death of a fellow-servant, whilst engaged in the same general employment under the same employer or master, unless it could be shown that the defendant was chargeable with negligence in employing careless and incompetent servants, or in failing to exercise ordinary care and prudence in selecting them. That such was the law prior to the passage of this act, may

readily be conceded; it had been so settled in this State by the case of McDermott v. The Pacific Railroad (30 Mo. 115); a well considered decision, which is sustained by numerous and very learned authorities, both in this country and in England. But in that case, the injured person did not die; the injury for which the action was brought occurred before the act was passed; and the suit, which was commenced and decided after the passage of the act, was based wholly upon the liability at common law, independent of statute provision; and accordingly there is no allusion to this statute, in the opinion of the court in that case. It cannot be considered as an authority on the main questions under discussion here; and for the same reason, it will be unnecessary to review the other authorities to the same effect which have been cited on behalf of the defendant.

Having thus settled the true construction of the statute, the instructions which were given and refused on either side may be easily disposed of. The first instruction refused for the plaintiff, based his right to recover upon the simple ground of negligence, unskillfulness, or criminal intent, in an officer, servant or employee of the defendant, whilst running and conducting the locomotive which caused the collision, and occasioned the death of the injured person, whose representative brings the suit. It disregards entirely the fact that the injured person was a laborer at wages, and employed on the gravel train as a servant of the company, and a fellow-servant of the employee, against whom negligence in running the engine is charged.

Agreeably to the views above expressed, we are of opinion that this instruction should have been given; and for the like reasons, all the instructions that were given for the defendant were erroneous, and should have been refused.

The second instruction refused for the plaintiff, was to the effect that if the plaintiff's husband died from injuries resulting from a collision of the locomotive and cars of the defendant, whilst an officer, servant, or employee of defendant, was running, conducting and managing the locomotive

in question, this is presumptive proof of negligence, and it devolves upon the defendant to show that the company was chargeable with no default. This instruction makes an erroneous application of a principle derived from the law of carriers, which has no proper application beyond that relation, and it was rightly refused. The only authority which has been cited in support of it, has reference exclusively to the law of carriers of passengers. (Pierce's Amer. R. Law, 493.)

Undoubtedly, in the case of a passenger, with reference to whom the defendant stands in the relation of a carrier for hire, bound to exercise the utmost care and diligence, and responsible for the slightest neglect, when an accident and injury are proved resulting from the breaking of carriages or machinery, a want of road-worthiness, or insufficiency of construction, or equipment or other like accidents occurring on the road, the law will imply some degree of negligence from these facts ; for, from their very nature they may be taken as affirmatively importing at least that slightest degree of negligence or unskillfulness which will be sufficient to render a carrier liable for an injury done to a passenger. (Ware v. Gay, 11 Pick. 106 ; Galena & Chicago R.R. Co. v. Harwood, 17 Ill. 509 ; Laing v. Colder, 8 Barr. 479 ; 2 Greenl. Ev. § 222.)

But the injured person here was in no proper sense a passenger ; he was a hired servant, a day laborer working for wages, and engaged in the ordinary course of his employment and business on the gravel train, at the time of the injury. He paid no fare, but received a compensation for his services in that place, and in that capacity; and by the terms of his contract and the character of the employment, he took the responsibility on himself of all the risks and dangers that ordinarily and necessarily attend such an occupation. Between him and the corporation the relation of carrier and passenger did not at all exist; the proper relation subsisting between them was that of master and servant only ; and the liability of the company for an injury done to him, is to be

determined by the law governing that relation and by the special statute.

The second clause, as we have seen, goes upon this same principle of the law of carriers; and so it declares that when any passenger shall die from an injury resulting from any defect or insufficiency in the railroad, or its engines and trains, the defendant shall be liable without any further proof of negligence; for when the facts are made to appear, the act assumes a *prima facie* case of negligence to be implied. But it is not to be taken as conclusive, nor is the matter of negligence rendered immaterial or unimportant. The burden of proof is merely shifted upon the defendant; for at last, even in the case of a passenger, and much more in the case of an employee or a stranger, the defendant is not to be held responsible in damages for the consequences of unavoidable accident, simple misadventure, or inevitable fate, without any fault or any want of reasonable care, skill and prudence on the part of himself, his officers, agents or servants. Nor is the defendant to be held liable in such case for accident and injuries resulting from the operation of natural and physical causes, not within the control of reasonable care and diligence, any more than for those occasioned by the act of God and public enemies. (Stokes v. Saltonstall, 13 Pet. 181.)

The case, then, is to be considered as falling exclusively under the first clause of the statute relating to persons in general. Under the operation of this clause alone, all persons, whether passengers, agents, servants or employees, or mere strangers, are left to stand in the same position and in the same relation to the defendant as if they were all strangers. It has the effect to apply and extend the principle of *respondeat superior* to the principal employer, whether a corporation or an individual, in respect of his officers, agents, servants or employees, and he is made liable for their negligence or unskillfulness, or criminal intent, in the same manner as if it were his own. In all cases which can arise under this clause, the negligence, unskillfulness, or criminal

intent, necessarily constitutes the gravamen and very gist of the cause of action, and the plaintiff must affirmatively prove all the facts which are necessary to sustain his cause of action and make out a case against the defendant.

The burden of proof rests on the plaintiff. In the absence of affirmative and positive proof of such negligence, unskillfulness or criminal intent, the simple fact of an accident and injury, resulting in death, would rather be attributable presumptively to misadventure, inevitable fate, or other causes for which the defendant would not be liable. There need be no proof in such case of any negligence or want of care and diligence on the part of the employer in selecting his agent and servant, for the act does not rest the liability on any negligence of that kind; though the liability at common law for injuries occasioned by such negligence may still remain as before unaffected by the statute. In all such cases the burden of proof rests wholly on the plaintiff to show negligence by affirmative evidence, and it cannot be presumed from the mere fact that an accident and injury have occurred. Without such proof, the plaintiff will be non-suited. On this point the authorities are numerous and decisive. (Pierce's Am. Law R., 314, 357; Redf. 359; Ang. Carr. § 566; Waldron v. Portland R.R. Co., 35 Me. 422; Batchelder v. Heagen, 18 Me. 32; Lindsay v. Conn. & P. R.R. Co., 27 Vt. 643; Perry v. N. Y. Cent. R.R. Co., 22 Barb. 574; Suydam v. Grand St. & N. R.R. Co., 41 Barb. 375; Haring v. N. Y. & Erie R.R. Co., 13 Barb. 15; Stuart v. Hawley, 22 Barb. 619; Railroad Co. v. Yeiser, 8 Barr. 366; Rood v. N. Y. Cent. R.R. Co., 18 Barb. 85.)

The third instruction refused for the plaintiff, placed the fact of negligence in the employee of defendant correctly enough before the jury as depending upon the consideration whether they exercised the care and foresight of prudent men, and we think it should have been given.

Judgment reversed and cause remanded. The other judges concur.