STATE OF MAINE *vs.* MAINE CENTRAL RAILROAD COMPANY.

*Statute—construction of.*

The remedy, by indictment, for the life of any person, in the exercise of due care and diligence, lost by the negligence or carelessness of any railroad corporation, or by that of its servants or agents while employed in its business, is limited to cases where the person injured dies immediately, and is not applicable in any case to the employees of the road.

INDICTMENT alleging that the Maine Central Railroad Company, a corporation duly and legally established in this State, in said county of Kennebec, on the 27th day of June, A. D. 1871, at Farmingdale, in said county, over, upon, and along a certain railroad called the Portland & Kennebec Railroad, managed, operated, and controlled by said Maine Central Railroad Company, running and extending from Augusta, in said county, to Portland, in the county of Cumberland, did, by their agents and servants, run, conduct, and drive a certain locomotive steam-engine and train of cars attached, and by their agents and servants, then and there had the care, custody, management, and control of said engine and cars; upon which said engine was one Wilson Cavill, a servant of said company, then and there acting in the capacity of fireman, and being then in the exercise of due care and diligence; that by the gross negligence and carelessness of the agents and servants of said Maine Central Railroad Company, other than the said Wilson Cavill, the said locomotive steam engine, with train of cars attached, was then and there permitted and suffered to strike and run into and against, and to be with great force and violence driven and dashed into, upon, and against a certain other locomotive steam-engine, and one car attached, called the Gardiner and Augusta accommodation train, which said accommodation train was then and there lawfully traveling and being propelled on and along said railroad, by means of which the aforesaid engine, upon which was the said Wilson Cavill, was thrown with great violence from

the track of said railroad and broken in pieces; whereby divers mortal injuries, bruises, scalds and wounds were inflicted upon the head, body, and limbs of the said Wilson Cavill, of which said mortal injuries, bruises, scalds, and wounds the said Wilson Cavill, on the twenty-ninth day of said June, A. D. one thousand eight hundred and seventy-one, at said Augusta, died.

And so the jurors aforesaid upon their oaths aforesaid, do say that the life of said Wilson Cavill, he being then and there a person in the exercise of due care and diligence, was then and there lost by reason of the gross negligence and carelessness of the aforesaid agents and servants of said company, other than the said Wilson Cavill, in manner and form aforesaid; whereby the said Maine Central Railroad Company have become liable to forfeit not less than five hundred nor more than five thousand dollars, to be recovered by indictment, wholly to the use of, etc.

To this indictment the defendants filed a demurrer, which was joined.

*T. B. Reed,* attorney-general, for the State.

*Bradbury & Bradbury,* for the defendants.

WALTON, J. The statutes of this State declare, in effect, that, when the life of a person is lost though the carelessness of a railroad corporation, or its servants, compensation shall be made to the heirs of the deceased, to be recovered by indictment. R. S., c. 51, § 36.

1. One question presented is, whether the remedy by indictment is not limited to cases where the person injured dies immediately. We think it is. If he does not die immediately a right of action accrues to him, which will survive to his personal representatives, and no other remedy is needed. R. S., c. 87, § 8. But if he does die immediately, no right of action will accrue to him, and, of course, none will survive to his heirs, or to his personal representatives, for their benefit. Several distressing cases of this kind are mentioned by Chief Justice Shaw. *Kearney* v. *Railroad,* 9 Cush. 108; *Hallenbeck* v. *Railroad,* 9 Cush. 478.

We think the remedy by indictment was intended to apply to the latter class of cases alone. To hold otherwise would involve the legislature in the absurdity of creating two independent, and, to some extent, conflicting remedies, for one and the same injury. We think the remedy by indictment was intended to apply to a class of cases where none would otherwise exist. If the person injured dies immediately, the remedy is by indictment. For such cases no other remedy exists. But if the injured person does not die immediately, then the remedy is by a civil action. The remedy by indictment ends where the remedy by a civil suit begins.

Thus construed the statutes are in harmony, and the absurdity of supposing that the legislature intended to create two independent and conflicting remedies, for one and the same injury, is avoided.

In Massachusetts, a statute similar to ours has been differently construed. It is there held that the remedy by indictment is not limited to cases where the death is instantaneous,—that the purpose of their statute was to inflict punishment as well as to secure compensation to the family of the deceased. *Com.* v. *Metropolitan Railroad Co.*, 107 Mass. 236. Such may have been the purpose of their legislature. It may there be necessary to provide some other means than a civil suit for punishing delinquent and grossly careless railroad companies. But in this State, where the rule that in a civil suit against a railroad company the jury may inflict punitive damages (if the case is one calling for punishment) is in full force, no such motive can be presumed to have influenced the legislature in passing our statute, and none such can influence the court in construing it. See *Goddard* v. *Railroad*, 57 Maine, 202. Besides, we have already held, in another case (*State* v. *Railroad*, 58 Maine, 176), that the intention of our legislature was no more than to do away with the rule, that all claim for damages must stop at the grave; that when damages are sought to be recovered upon indictment, the same rules of evidence, and the same principles of law, apply, as when redress is sought by a civil suit; and we cannot now resist the conviction that the sole purpose of our legislature

was to provide for the family of the deceased a means of redress where none would otherwise exist; and that it was no part of their purpose to punish the corporation as for a criminal offense. Influenced by these considerations, we think the remedy by indictment ceases when the remedy by civil suit accrues; that neither punishment nor the redress of grievances requires an overlapping of the two remedies.

2. Another question is, whether the statute under consideration is applicable to a case where the person killed was, at the time, an employee of the road. We think this question must also be answered in the negative. It is certain that the act of 1855, which is the basis of the existing law, did not apply to the employees of the corporation. The first section of the act applied only to passengers. The second section of the act applied to persons other than passengers, but expressly excluded the employees of the road. In the revised statutes, these several provisions are crowded into one section of only seven lines, and the language employed is more general. But there is nothing to lead us to believe that a change of the law was intended. Our conclusion, therefore, is that the existing statute is not applicable to the employees of the road. To hold otherwise, would endanger the safety of travelers. Their safety requires that the persons in charge of a train of cars should be regarded as a unit; that each should feel responsible, not only for his own conduct, but also for the conduct of all the others. They should be made to feel that it is their duty, not only to be watchful of themselves, but to be watchful of each other. And this end will be best secured by making them the insurers of their own safety. Such was the opinion of Chief Justice Shaw. He says that where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends much on the care and skill with which each of the others performs his appropriate duty, each is an observer of the conduct of the others, and can give notice of any misconduct, incapacity, or neglect of duty, and leave the service, if the common employer will not take such precautions, and employ such agents as the safety of

the whole party requires ; that, by these means, the safety of each will be much more effectually secured, than could be done by a resort to the common employer for indemnity in case of loss by the negligence of each other. *Farwell* v. *Railroad*, 4 Met. 59.

Our conclusion, therefore, is, that the remedy by indictment is limited to cases where the person injured dies immediately, and to persons other than the employees of the road.

*Demurrer sustained.*

*Indictment adjudged bad.*

APPLETON, C. J.; KENT, BARROWS, and DANFORTH, JJ., concurred.