The Atchison, Topeka & Santa Fe R. R. Co. v. Farrow.

1. The rule of the common law, that the servant assumes all the ordinary risks of the service upon which he enters, including those risks which arise from the negligence of other servants of the same master in the same employment, is not abrogated by the statute (General Laws, p. 342); and *held*, that the words "any person" do not include servants of the same master injured by the negligence of a fellow-servant while acting in the common employment.

2. The statute was adopted for the purpose of preserving or perpetuating certain causes of action after the death of the party entitled thereto in the first instance.

3. The rule that courts are bound to adopt the prior judicial construction given a borrowed statute, in the state from which it is taken, is not inflexible.    When such construction is clearly erroneous, harsh and oppressive, or inconsistent with the spirit and policy of the laws of the state borrowing the statute, courts may, and frequently do, decline to follow it.

*Appeal from District Court of Pueblo County.*

The complaint in this case, filed in the district court of Pueblo county, alleges: "That the plaintiff is the mother

of one James F. Farrow, now deceased, and that at the time of the death of said James F. Farrow the plaintiff was, and now is, the only surviving parent of said deceased, and said deceased at the time of his death, and at all times prior thereto, was an unmarried man; and plaintiff further avers that said deceased was born in lawful wedlock.

"The defendant is a railroad corporation, organized under the laws of the then territory, now state, of Kansas, and is now, and at the time of the committing of the grievances hereinafter mentioned and complained of was, lawfully engaged in the business of running and operating a line of railroad from the town of Granada, in the county of Bent, state of Colorado, to the town of South Pueblo, in the county of Pueblo, state of Colorado, and at the time aforesaid the defendant was lawfully possessed of, and used and operated, divers side-tracks in the town last aforesaid.

"That on the 28th day of November, A. D. 1879, the said deceased, James F. Farrow, was in the employ of defendant, at the said town of South Pueblo, in the capacity of brakeman and coupler of cars in and about the trains of defendant that were made up and distributed in its yards at said town, and at said time and place the defendant was under the orders of one George Doran, who was then and there the yard-master of defendant and in its employ, both at the said town of South Pueblo, as well as the city of Pueblo, in said county of Pueblo.

"Plaintiff further alleges that the said yard-master at the said town of South Pueblo, then and there on said 28th day of November, A. D. 1879, had the sole charge, management and control of the making up, switching and distribution of the cars and trains of the defendant in and about its main and side tracks, at the town last aforesaid, by authority of said defendant, and said yard-master was also then and there invested by defendant with full authority to employ and discharge switchmen

or yard-brakemen, serving in the capacity as was said deceased as aforesaid, and the said deceased was bound to obey the orders and directions of said yard-master, as his superior officer, while so in the employ of the defendant.

"Plaintiff further alleges that on said 28th day of November, A. D. 1879, while deceased was as aforesaid in the employ of defendant, and under the orders and authority of its said yard-master as aforesaid, he, the said deceased, at the town of South Pueblo, in said county of Pueblo, was then and there ordered by the said yard-master of defendant to go between certain cars of defendant's train that was being then distributed and made up at said last named town under the direction of said yard-master, and deceased was then and there further ordered by defendant, through and by its said yard-master, to uncouple certain of said cars on said train when he was so between said cars, and in obedience to the said orders and directions of defendant, by its yard-master, the deceased did then and there go between said cars and attempt to uncouple the same; and plaintiff avers the fact to be, that said yard-master of defendant then and there, without giving the said deceased any opportunity or time whatever to uncouple said cars and come out from between the same, did then and there negligently, carelessly, and without the exercise of caution or warning to the deceased, signal the engineer of defendant's engine then and there attached to said train to back up the said train and put it in motion, which signal the said engineer then and there obeyed, and the said train was accordingly so rapidly, and to the deceased so unexpectedly, put in motion, that, before the deceased could, under the circumstances in which he was then placed, extricate or move himself from between said cars, he was knocked down between the same, and one of said cars immediately ran over his body, and thereby then and there causing the death of the deceased, who died almost instantly after his body was so run over by defendant's car.

"And plaintiff avers that the death of the deceased as aforesaid was solely caused by the negligence of defendant's yard-master, by so causing the said train as aforesaid to be improperly, negligently and prematurely put in motion and backed upon deceased, while deceased was lawfully between said cars, which fact said yard-master then and there well knew, and also before deceased had any opportunity whatever to uncouple said cars and escape from between the same; and plaintiff alleges that with all the knowledge which said yard-master then and there possessed concerning the position and danger of deceased and the ability which he could exert to extricate himself therefrom, no ordinary, prudent or competent yard-master would have signaled the said train to back up upon said deceased as did the said yard-master of defendant at the time, place and manner aforesaid; wherefore plaintiff alleges that the deceased did then and there die from the injuries received by him in consequence of being so run over by defendant's said car, and that the said injuries resulted from the negligence and unskilfulness of defendant's said yard-master in so causing the said train to be so moved and backed up.

"Plaintiff further alleges that she is, and for many years before the said death of deceased was, an aged, infirm and indigent person, without any property, means or income whatsoever, and wholly incapacitated from any manual labor for the said reasons, and for many years her said son, now deceased as aforesaid, provided her with the necessaries and comforts of life, and by his death she is now left destitute and with no means of procuring a livelihood, to the great damage and injury of plaintiff.

"Wherefore, plaintiff demands judgment against the defendant in the sum of five thousand dollars ($5,000), together with the costs of this action."

A demurrer to the complaint was overruled, and afterwards the defendant filed the following answer:

"As to whether the plaintiff is the mother and only

surviving parent of one James. F. Farrow, deceased, and as to whether the said James F. Farrow was at the time of his death, and at all times prior thereto, an unmarried man, this defendant has not and cannot obtain sufficient knowledge or information upon which to base a belief.

"It denies that the said George Doran, mentioned in the complaint as having been this defendant's yard-master at the town of South Pueblo, had, on the 28th day of November, 1879, the sole charge, management or control of the making up, switching and distribution of cars in and about its main and side tracks at the place aforesaid; and denies further that he was then, or at any time before or after, invested by this defendant with full authority to employ or discharge switchmen or yard-brakemen in and about the said yard, and denies further that he had any authority whatever in that regard. The defendant admits, however, that the said George Doran was at the time and place aforesaid superior in grade of employment to the said deceased, and that the latter was bound to obey, in the due and usual course of his employment, the orders and directions of the said Doran.

"Defendant admits that the deceased, immediately before or at the time of his death, was engaged in the act of coupling or uncoupling cars at the place aforesaid, but denies that his death was solely or in any manner whatever, caused by the negligence or unskilfulness of this defendant, or of the said Doran, its yard-master; and denies particularly that the said Doran, without giving the said deceased any opportunity or time to come out from between the said cars, or without the exercise of caution or warning, did signal the engineer to put the said cars in motion, whereby the deceased was unable to extricate himself, and was knocked down between the cars, as is alleged in the complaint. On the contrary, defendant says that the said Doran used due care and diligence in and about the switching, uncoupling and distribution of said cars, and that the said injury was not caused by any negligence on the part of the defendant or its servants,

but was owing to the negligence and fault of the deceased himself." ·

The plaintiff replied, denying the negligence and fault of deceased, and averring that the death was caused by the negligence of plaintiff.

Upon the trial of the issues the jury found a verdict in favor of the plaintiff in the sum of $5,000, upon which judgment was subsequently entered, and the defendant prosecutes this appeal.

Messrs. THATCHER and GAST, for appellant.

Mr. JOHN M. WALDRON and Mr. T. T. PLAYER, for appellee

HELM, J.   Counsel for both parties in this case concede the common law doctrine that "The servant assumes all the ordinary risks of the service upon which he enters, including those risks which arise from the negligence of other servants of the same master in the same employment." *Dillon v. U. P. R'y Co.* 3 Dillon C. C. R. 320.

This general doctrine is not without qualifications, but it is unnecessary for us to consider at this time any of these qualifications, save the one which it is claimed our statute imposes.   Neither is it necessary for us to discuss the various reasons existing in favor of the general rule or doctrine.   These reasons will be found clearly and concisely stated in *Colorado Central R'y Co. v. Ogden*, 3 Col. 499.

The statute above mentioned is section 1 of an act concerning damages (General Laws of Colorado, p. 342), which reads as follows:

"Whenever any person shall die from an injury resulting from or occasioned by the negligence, unskilfulness or criminal intent of any officer, agent, servant or employee, while running, conducting or managing any locomotive, car or train of cars, or of any driver of any

coach or public conveyance whilst in charge of the same as driver, and when any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad or any part thereof, or in any locomotive or car, or in any stage-coach, or other public conveyance, the corporation, individual or individuals, in whose employ any such officer, agent, servant, employee, master, pilot, engineer or driver shall be at the time such injury is committed, or who owns any such railroad, locomotive, car, stage-coach, or other public conveyance, at the time any such injury is received, and resulting from or occasioned by defect or insufficiency above described, shall forfeit and pay for every person and passenger so injured the sum of not exceeding $5,000, and not less than $3,000, which may be sued for and recovered," etc.

The court below tried the case upon the theory that the common law rule above stated is partially abrogated by the foregoing statute, and that the words " any person " used therein include servants and employees; that when the employee of a common carrier loses his life through the negligence of a co-employee, the employer or master is liable to the persons designated by statute, regardless of the care used by him in the selection of his employees or servants.

The act contains four other sections, but there is nothing therein giving a right of action for such injuries to the employee himself, if he survive the same. The position of appellee and the district court, therefore, is, that the legislature intended to say that the common law rule depriving the employee injured, himself, of any remedy, unless his case be covered by one of the exceptions, shall remain in force; but that, if he die from the injury, a right of action in favor of some third person shall spring into existence; that, though he be rendered a helpless cripple and invalid, and a burden and expense to his friends, through the negligence of a co-employee, still he shall have no right of action against his employer, while,

if he be instantly killed, his widow or heirs may recover $5,000 from such employer. The legislature had the power to create this distinction, but their intent to do so should appear clearly from the context of the act itself; for, if there be doubt about it, and the statute will bear another reasonable interpretation, one which is not in conflict with the common law, the latter should be adopted.

The first section above quoted may be divided, with reference to the individual injured, into two parts: First, where *any person* dies from an injury caused by the negligence, unskilfulness or criminal intent of an officer, servant or employee; and secondly, where the death of a *passenger* is occasioned by a defect or insufficiency of a railroad, locomotive, car, stage-coach or other public conveyance.

It would not be contended that the word passenger includes employees, although they are upon the defective car or conveyance, and receive fatal injuries through such defect. Why should the legislature discriminate between the two causes of death? Why should they say that a right of action shall be given to the widow when death results from the negligence of a fellow-servant, but deny the same when it is due to defects in the car or conveyance upon which the servant is compelled to ride? The employer or master is no more at fault in one case than in the other. His responsibility and liability are, in law, no greater in the choosing of competent and careful servants than they are in the selection and purchase of safe machinery and appliances.

It cannot be said that the use of the word *owns* in connection with the latter cause of injury creates a liability in some third party; that it refers to the owner of the defective car, although he have nothing whatever to do with the operating of the road or management of the business. See *Proctor v. Hannibal & St. Jo. R'y Co.* 64 Mo. 112.

We do not think the legislature intended to distinguish in this way between the sources of injury and death; neither do we think that they intended to discriminate against the party injured, should he survive, and in favor of his widow or heirs in case of death from the injury. Had it been their intention to make these distinctions, and to abrogate a principle of the common law so universally recognized, they would have voiced that intention in language so plain as to render construction unnecessary.

A careful analysis of the act leads us to the conclusion that it was adopted for the purpose of preserving or perpetuating certain causes of action after the death of the party entitled thereto in the first instance. That instead of creating a new cause of action it simply keeps alive a right of action which would else have perished, under a familiar rule of the common law, upon the decease of the person injured.

But counsel for appellee ask, if this be correct, "Of what value or necessity is section 2 of the act?"

We answer, that the legislature discriminates between common carriers and other corporations and individuals. They confine section 1 to the former, while section 2 includes the latter. They desired to impose a different liability upon common carriers from that resting upon all other persons, and chose this way of doing it.

The common carrier, if liable at all, under section 1, must forfeit and pay not less than $3,000 nor more than $5,000.

All other persons, natural and artificial, who are guilty of the tortious conduct described in section 2, are liable to an action in damages for any amount from one cent to $5,000. In the former case no "mitigating circumstances" can reduce the amount of the judgment below $3,000, while in the latter the judgment may be reduced thereby to such nominal sum as will carry the costs.

Our statute seems to have been copied from the Missouri act on the subject of damages; the sections are

numbered differently, and vary slightly in the amount to be recovered, but otherwise the language is almost exactly the same in both acts.

In *Schultz v. The Pacific R'y*, 36 Mo. 13, the court holds that the words "any person" include employees or servants. In *Connor v. Chicago, Rock Island & Pacific R'y Co.* 59 Mo. 285, the court, with one dissenting voice, adhere to the view taken in the Schultz case; but in *Proctor v. Hannibal & St. Jo. R'y Co.* 64 Mo. 112, *supra*, the court, one judge dissenting, overrule the two former cases, and give the construction we have adopted above.

The last of said opinions was rendered at the October term, 1876, but was not officially published in the state reports until the middle or latter part of 1877. Our legislature adopted the statute under consideration on the 7th of March, 1877. Counsel for appellee argue that the Proctor opinion could not have been known, or, at least, the presumption is that it *was* not known, to the legislature of Colorado when they borrowed said act from Missouri; that they must be presumed to have adopted, with the act, the construction thereof given by the supreme court of Missouri in the two earlier cases above mentioned, and, therefore, under a familiar rule of statutory construction, we are bound to adhere to the view taken in those cases.

But in the first place, there is no absolute certainty that the construction given in the Proctor case was unknown to our legislature on the 7th of March, 1877; and secondly, if it were then unknown to that body, we would not feel under obligation to follow the former opinions. The rule that courts are bound to adopt the prior judicial construction given a borrowed statute in the state from which it is taken, is not inflexible. Where such construction is clearly erroneous, harsh and oppressive, or where it is inconsistent with the spirit and policy of the laws of the state borrowing the statute, courts may,

and · frequently do, decline to follow it. See *Freas v. Englebrecht*, 3 Col. 385.

It can hardly be seriously contended that the rule should control in a case like the one at bar, where the supreme court has repudiated and abandoned its own construction. The construction announced in the Schultz case prevailed in Missouri for over twelve years; it became a part of the law, and was relied upon as fully as any statutory provision; and the supreme court of that state would certainly not have reversed itself but for an overwhelming conviction that it had committed a serious and palpable error.

The states of Maine and Iowa have statutes upon the same subject as the one under consideration; each of these statutes contains the words " any person " in a connection similar to that in which we have found and considered them; and the courts of those states have held that such statutes do not include servants of the same master, injured by the negligence of fellow-servants while acting in the common employment. *State v. Maine R'y Co.* 60 Me. 493; *Carle v. Bangor P. C. R'y Co.* 43 Me. 271; *Sullivan v. Miss. & Mo. R'y Co.* 11 Iowa, 422.

It is unnecessary for us to consider the assignments of error in detail. The judgment must be reversed and the cause remanded.

*Reversed.*