Proctor v. Hann. & St. Joe. R. R. Co.

EMMA F. PROCTOR, Respondent, *vs.* HANN. & ST. JOE. R. R. Co., Appellant.

PER CURIAM.

1. *Statute, construction of—Particular words and passages, how construed.*— Where particular words or clauses of a statute are of doubtful import, they should be construed in connection with the entire statute, and if their literal construction would lead to a conflict in the statute, or to absurd conclusions, they should be restricted or enlarged so as to render the statute harmonious and sensible.

2. *Damage act—Death caused by negligence of co-employee—Selection of, care of company in reference to—Section 2, of Damage Act, merely transmits cause of action.*—The master cannot be held for injuries received by one servant through the negligence and unskillfulnes of his fellow servant, unless in the selection of the latter the master fails in care and diligence, or retains him after knowledge of his character; and § 2 of the Damage Act, properly constrained in its context, gives the representative of a deceased railroad employe no right of action against the company for death caused by the negligence and unskillfulness of a co-employe, except where his selection or retention is attributable to the want of care in the company.

The phrase "any person," as used in that section, does not include fellow servants.

The right designed to be conferred by § 2 is analogous to that given by § 3, and not an original one created after the death of the employe, but a right which the deceased might have exercised, had he survived, and which is transmitted to his representative. Nor is any new right of action given by the latter clause of section 2, to the representatives of a deceased passenger against an owner of the road as contra-distinguished from the corporation having charge of it. The term "owner" is therein used in the sense of proprietor or operator at the time of the accident. The above construction is aided by the following considerations: *a.* Were the interpretation different, the deceased might recover for his injuries independently of the statute, if he survived long enough, and after his death recovery might again be had under § 2, for the same casualty. *b.* Under the first clause of the section, in case of death from the negligence of the co-employe, a right is given the representative after the decease, which had no existence before. *c.* And under the 2d clause, in case of death resulting from defective appliances, the representative is denied a right which the deceased might have exercised, had he survived. (Schultz vs. Pac. R. R., 30 Mo. 13, overruled.)

PER HENRY, J., DISSENTING.

1. *Railroad Damage Act, construction of—Sections 2 and 3 compared—Section 2, road liable in case of death of employee, etc., regardless of care in selecting co-employee—Representative of passenger—Action against "owner"—Meaning of word—Section punitory—Section 3, contrawise.*—Sections two and three of the Damage Act, in regard to their intents and purposes, differ in several important particulars.

Section 2 is in derogation of the common law.

(a.) It gives the representatives of the servant killed by the negligence of the fellow servant, an action against the master, regardless of the care bestowed by the latter in the selection or retention of the fellow workman. ·Such right is not a transmitted one, for the servant himself could not have sued under that section. (b.) It gives the representative of the deceased passenger an action against the owner, whether operating the road or not. The word "owner" is not restricted in that section to the operator.

It is penal in its phraseology (sic. making the road "pay a forfeit" and in its designation of the sum to be assessed inflexibly fixed at $5,000 regardless of the losses entailed on the family of the servant by his death).

Section 3 was designed merely to prevent the abatement of a common law cause of action by death. It gives the representatives of the deceased an action against the operator of the road, but not against the owner not so operating it. It is not penal but compensatory in its terms, the amount recoverable being "damages" such as may be "fair and reasonable, not exceeding $5,000."

2. *Railroad Damage Act—Section 2, servant—Right of representatives to sue in case of defective machinery not taken away by.*—The latter clause of section 2 does not take from the representative of the servant his right of action against the master at common law, for defective machinery.

3. *Railroad Damage Act—"Person," meaning, of term.*—The term "any person," used in section 2, includes servants as well as passengers.

### *Appeal from Sullivan County Circuit Court.*

### *James Carr*, for Appellant.

It is a well established principle of the common law, that the master is not liable to an employee for an injury produced by the negligence of a co-employee employed generally in the same business, provided the master has not been guilty of negligence in employing such negligent servant, or in retaining such servant after notice of his incompetency. (Priestley vs. Fowler, 3 M. & W. 1 ; Hutchinson vs. The York, Newcastle & Berwick Railway Co., 5 Excheq. R. 343 ; Wigmore vs. Jay, Id. 354; Skip vs. Eastern Counties Railway Co., 24 Eng. L. & Eq. R. 396 ; S. C. 9 Excheq. R. 223 ; Degg vs. Midland Railway Co., 1 Hurl. & N. 773 ; Tarrant vs. Webb, 37 Eng. L. & Eq. R. 281 ; Mellers vs. Shaw, 7 Jur. N. S. 845 ; Seymour vs. Maddox, 16 Q. B. 326 ; Ormond vs. Holland, 1 El., Bl. & Ellis, 102 ; Morgan vs. Vale of Neath Railway Co., 5 Best. & S., 570 ; L. R. 1 Q. B. 149 ; Feltham vs. England, L. R., 2 Q. B. 33 ; Wiggot vs.

Fox, 36 Eng. L. & Eq. R. 486 ; Searle vs. Lindsay, 11 C. B.
N. S. 429 ; Hall vs. Johnson, 3 H. & C. 589, 34 L. J. Exch.
Ch., decided in 1865 ; Murray vs. South Carolina Railroad Co.,
1 McMullen, 385 ; Farwell vs. Boston & Worcester Railroad Cor-
poration, 4 Met. 49 ; Gillshannon vs. Stony Brook Railroad Co.,
10 Cush. 228 : Gilman vs. Eastern R. R. Co., 10 Allen, 233 ;
Coombs vs. New Bedford Cord Co., 102 Mass. 572 ; Carle vs.
Bangor, &c. R. R. Co., 48 Me. 291 ; McMahon vs. Davidson 12
Minn. 357 ; Michigan &c. R. R. Co. vs. Seaberry, 10 Mich.
193 ; Davis vs. Detroit &c. R. R. Co., 20 Id. 105 ; Wonder vs.
B. & O. R. R. Co., 32 Md. 410 ; Ponton vs. Wilmington, &c.
R. R. Co., 6 Jones, N. C. 245 ; Fifield vs. R. R. Co., 42 N. H.
240 ; Brown vs. Maxwell, 6 Hill. 592 ; Coon vs. Syracuse, &c.
R. R. Co., 5 N. Y. 432 ; Russell vs. Hudson River R. R. Co.,
17 Id. 134 ; Wright vs. N. Y. Central R. R. Co., 25 Id. 572 ;
Sherman vs. Rochester R. R. Co., 17 Id. 153 ; Lanning vs. N.
Y. Central R. R. Co., 49 Id. 528 ; Ryan vs. Cumberland Valley
R. R. Co., 23 Penn. St. 384 : Frazier vs. Penn. R. R. Co., 28
Id. 104 ; Weger vs. Penn. R. R. Co., 55 Id. 460 ; Ardesco
Coal Oil Co. vs. Gibson, 63 Id. 150 ; Fox vs. Sandford, 4 Sneed.
36 ; Noyes vs. Smith, 28 Vt. 59 ; Hart vs. Vermont R. R. Co.,
34 Id. 473 : Hawley vs. Baltimore & Ohio, R. R. Co. 6 Am.
Law. Reg. 352 ; Chamberlain vs. Milwaukee, &c. R. R. Co., 7
Wis. 425 ; Mosely vs. Chamberlain, 18 Id. 700 ; Hubgh vs.
N. O., & C. R. R. Co., 6 La. Ann. 495 ; Union Pacific R. R.
Co. vs. Young, 8 Kas. 658 ; Sullivan vs. Mississippi & M. R.
R. Co. 11 Iowa, 421 ; Burke vs. Norwich & Nor. R. R. Co., 5
Conn. 474 ; Hallman vs. Henley, 6 Cal. 209 ; Yeomans vs. C.
C. S. Nav. Co., 44 Id. 71 ; Mobile, &c. R. R. Co. vs. Thomas,
42 Ala. 672 ; Chicago & N. W. R. R. Co. vs. Swett, 45 Ill. 197 ;
Illinois Central R. R. Co. vs. Sewell, 46 Id. 99 ; Chicago & Al-
ton R. R. Co. vs. Murphy, 53 Id. 339 ; Horner vs. Illinois Cen-
tral Railroad Co., 15 Id. 550 ; Madison & Indianapolis R. R.
Co. vs. Bacon, 6 Port. 205 ; Ind. R. R. Co. vs. Lane, 10 Ind.
554 ; C. & I. R. R. Co. vs. Klein, 11 Id. 38 ; Ohio & Missis-
sippi R. R. Co. vs. Tindall, 13 Id. 367 ; Same vs. Hammersly,
28 Id. 28 ; Wilson vs. Madison, &c. R. R. Co., 18 Id. 226 ;

Col. & Ind. R. R. Co. vs. Arnold, 31 Id. 174 ; Pittsburgh, &c. R. R. Co. vs. Ruby. 38 Id. 294 ; McDermott vs. Pacific R. R. Co., 30 Mo. 115 ; Higgins vs. Hannibal & St. Joseph R. R. Co., 36 Id. 418 ; Rohback vs. Pacific R. R. Co., 43 Id. 192 ; Harper vs. Ind. & St. Louis R. R. Co., 47 Id. 567 ; DeWitt vs. Pacific R. R. Co., 50 Id. 302 ; Moss vs. Same, 49 Id. 167 ; Brothers vs. Carter, 52 Id. 372 ; Shearm & Redf. Negl. [3 ed.] 113 ; Whart. Negl. 224 ; 1 Redf. Railw. 520 ; 1 Cooley Black. Com. 432 ; Broom Leg. Max. [6 Am. ed.] 629, 630 ; 2 Hill. Torts, 470, 471 ; 5 Best & S. 570 ; 33 L. J. Q. B. 260 ; affirmed in the Exchequer, Ch. L. R. 1 Q. B. 145 ; 35 L. J. Q. B. 23.)

The common law is not changed by this act, only to give a remedy to the representative of the party killed, where he would have a right of action if he had not been killed. If Proctor had had both legs cut off by this collision : had been internally injured, so much so that he would have been compelled to occupy his couch the remainder of his life, and he had suffered the excruciating pains and agonies of a thousand deaths, and his wife had been compelled to feed, clothe and care for him, still he could not have recovered a dollar. Is this statute to be construed as giving an action to the widow, when her husband would have had none if he had survived the accident? That would be strange construction indeed! As to the construction elsewhere of the expression "any person," see Bent vs. St. Vrain, 30 Mo. 268 ; 1 Pow. Dev. 140 ; Dyer, 354 ; Osgood vs. Breed, 12 Mass. 528-30 ; Wilbur vs. Crane, 13 Pick. 289, 90 ; Reed vs. Davis, 8 Pick. 513.

The decision of this court in the case of Schultz vs. Pacific Railroad Company (36 Mo. 13) is not in line either with authority, with the true intent and meaning of the law makers—or with sound policy. The principle therein enunciated was impliedly overruled in the case of Higgins vs. The Hannibal & St. Joseph Railroad Company (36 Mo. 418).

*Huston & Banning*, for Respondent.

The court did not err in giving instructions on the part of respondent, nor in refusing instructions asked by appellant. The petition is founded entirely on the statute. (Wagn. Stat. ch. 43, § 2.) The language of the statute is plain and easily understood. The term "any person" includes employees, or else the English language must be tortured into a denial of its plain import. If employees are within the words, they are within the intention of the statute, unless they are restrained or limited. That general words of a statute are to receive a general construction, see 6 Shepley, 308 ; 6 Ad. & El. ——. When the construction of a statute follows the words, it should not be overturned on, at least, doubtful evidence of intention. (Wannel vs. Smith, 15 Ohio, 134 ; Kenny vs. Greer, 13 Ill. 432.) The construction placed upon the section has become a part of it. (3 Pick. [Mass.] 567.) This whole question has been ably considered by this court, and the statute has received this construction. (Schultz vs. Pacific Railroad Company, 36 Mo. 13.)

The case of Rohback vs. The Pacific Railroad Company (43 Mo. 187) was brought by the servant himself, and the court held that the action could not be maintained by the servant himself. The case of Schultz was cited approvingly in the opinion. The court, referring to that case, says : "That case was brought by the widow of a deceased husband, under the 2d section of the act for the better security of life and property. There the statute gives the action in plain and unmistakable terms, and abrogates and modifies the common law." (43 Mo. 194 ; Brownell's case, 47 Mo. 243 ; Connor vs. Ch. &c. R. R. 59 Mo. 285.)

This statute has been in force twenty-two years. There have been ten sessions of the legislature since the section was construed in Schultz vs. P. R. Co., and no attempt has been made to amend section 2, so as to avoid the consequences of the construction placed upon it.

NORTON, Judge, delivered the opinion of the court.

This is an action instituted by plaintiff as the wife of Joseph Proctor, for the recovery of five thousand dollars damages, under the provisions of Wagn. Stat., 519, § 2.

The petition alleges that Joseph Proctor, who was the husband of plaintiff, was, on the 19th of March, 1873, in the employ of defendant as engineer, having the charge of an engine going west on defendant's road, propelling a train of cars ; that on said day a locomotive engine, with a train of cars thereto attached, bound east, belonging to defendant and operated on its said road by the agents and servants of the defendant and under its management, was by said agents and servants of defendant so carelessly, negligently and unskillfully run that said eastern bound train, without any fault of said Proctor, ran into and threw from the track the locomotive in charge of said Proctor, killing him instantly ; for which plaintiff, as the widow of said Proctor, asks judgment for $5,000 damages under said section two.

There was a trial and judgment for plaintiff, according to the prayer of the petition, from which defendant appeals.

On the trial the defendant objected to the introduction of any evidence.   1. Because there is no cause of action stated in the petition ; 2. Because the plaintiff seeks to recover in this cause on account of the death of her husband, Joseph Proctor, who was an employee of defendant at the time of his death, which was occasioned by the negligence or carelessness of co-employees of defendant ; 3. Because the plaintiff, as the widow of an employee of defendant, is not entitled to recover on account of the death of said employee, occasioned by the negligence or carelessness of co-employees of defendant.   4. Because there is no allegation in said petition that the employees of defendant, through whose negligence or carelessness said Joseph Proctor is alleged to have been killed, were not sober, careful, skillful men, nor that defendant did not exercise due and proper care in the selection of said employees.

These objections were overruled, to which action of the court the defendant excepted.

The point presented for our determination involves the construction of Wagn. Stat., 519, § 2, especially as to whether, under the words "any person" in said section, a fellow-servant whose death is occasioned by the negligence of a fellow-servant, without fault of the master, is, or was intended to be included. The determination of this point will be decisive of this case.

Before proceeding to its consideration it may be preliminarily observed that it is well established law, both in England and this country, that a common master or employer cannot be held liable for injuries received by a servant or employee in consequence of the negligence or unskillfulness of a fellow-servant or co-employee, unless in the employment of such negligent and unskillful servant he has failed to exercise due care and diligence, or has retained him in his service after notification or knowledge of his incompetency. This rule rests for its support on reasoning which commends itself to the judgment of all, and has been dictated by the highest motives of public policy, and has been so universally sanctioned by the highest authority that a departure from it cannot be allowed unless it is made by a plain legislative warrant. Chief Justice Shaw in case of Farwell vs. Boston and Worcester R. R. Cor., (4 Metc. 49,) says : "When several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the others ; can give notice of any misconduct, incapacity or neglect of duty, and leave the service, if the common carrier will not take such precautions and employ such agents as the safety of the whole party may require. By these means the safety of each will be much more effectually secured than can be done by a resort to the common employer for indemnity, in case of loss by the negligence of each other." The liability which the rule imposes on the master if he fails to use due care in the employment of competent servants, or his failure to discharge incompetent servants after knowledge of their incompetency has been brought home to him, tends to secure the employment of those only who are skilled and competent to perform all the duties growing out of the common employment.

The freedom of the master under the rule from liability for injuries received by one servant because of the negligence of a fellow servant tends to keep in the service of the master only those who are diligent, faithful and skillful in the performance of every duty to be performed in the common employment. By its operation, the interests of both employer and employee are promoted. It has not only this scope, but if the common undertaking consists in the operation of a railroad, the safety of the traveling public is most likely to be secured by it. A principle of the law thus salutary in its effects upon all who come within the operation of it should not be relaxed or departed from, unless by clear and express legislative direction.

The construction contended for of the second section of Wagn. Stat., 519, commonly known as the Damage Act, involves a relaxation of this rule, and would be a departure from the reasoning which sustains and upholds it. If, as is conceded in this case, the deceased, if he had lived and not died from the injury, would have had no right of action against the defendant, the giving of a right of action to his wife, where none existed before, is to that extent an infringement upon the reason of the rule.

Giving to the words " any person," as used in the second section, a literal import, and not considering them in connection with the evident purpose of the legislature, nor reading the section in which they occur in connection with sections 3 and 4, the construction contended for is alone maintainable. This method, however, of construing a statute is not to be adopted. When particular words or particular clauses of a statute are of doubtful import, they should be considered in connection with the entire statute, and in such cases, when such words or clauses literally construed would produce a conflict in the act or lead to absurd conclusions, they may be restricted or enlarged in their operation so as to cause each part of it to harmonize with every other part.

It is conceded by all that the third section of the act was only designed to transmit a right of action, which but for the section would have ceased to exist, or would have died with the person ; in other words, that under section three whenever a person dies

from such wrongful act of another as would have entitled the
party to sue had he lived, such cause of action may be main-
tained by certain representatives of the deceased, notwithstanding
the death of the party receiving the injury.   It creates no new
cause of action but simply continues or transmits the right to sue,
which the party whose death is occasioned would have had, had
he lived.   It is not only a right transmitted, but it is restricted
by limitations as to the persons who are to enjoy the right, the
time within which it is to be enjoyed and the amount of damages
to be recovered.   Section 4 provides that all damages accruing
under section 3 shall be recovered by the same parties and in the
same manner as is provided in section 2, and in every such action
the jury may give damages not exceeding five thousand dollars.  This
section, in connection with section 2, designates the parties to
whom this right is transmitted, and also the time within which it
is to be exercised.

It is not pretended that section 3 transmits a right of action
where a fellow-servant comes to his death by negligence of a fel-
low-servant, when it is not shown that the master acted without
due care in the employment of such fellow-servant, or retained him
after he had been informed of his incompetency.   Nor is it con-
tended that under section 2 or any other section of the act the
legislature has changed the common law rule as to the liability of
the master to the servant himself, for an injury occasioned by the
wrongful or negligent act of his fellow-servant.

The position assumed is, that under section 2, if a servant
shall die from an injury resulting from or occasioned by the neg-
ligence   *   *   *   of any officer, agent, servant, whilst running,
conducting or managing any locomotive, car or train of cars, his
representative may sue and recover $5,000 of the master, al-
though such servant, had he survived the injury, no matter how
serious, could not have maintained any action at all against the
master.

This conclusion is reached from the language used in the act—
" when any person shall die," &c.   It is true that these words,
in their literal signification, are comprehensive enough to include
a servant or employee, and to these terms their plain and natural

import should be given, unless absurd consequences follow, and inconsistencies in the act are brought to light by such meaning.

Adopting the construction insisted upon by plaintiff, and a servant injured by a fellow-servant while operating a locomotive or train of cars, although he may be maimed, mangled and disfigured, and may suffer for an indefinite period of time the most excruciating tortures, can have no action against the master or employer; yet if he die, his representative may recover of the employer $5,000. Under the view of plaintiff, the right to sue is not a transmitted right, but an original right, arising or appearing for the first time at the instant of the death of him or her through whom the right is derived. The very face of the second section is at war with any other idea than that the right to sue was intended to be a transmitted right, and not an original right. This is shown by the character of the parties authorized to sue. They must be first, either the husband or wife of the deceased; second, if there be no husband or wife, or he or she fails to sue in six months after the death, then the minor child or children of the deceased; or third, if such deceased be a minor and unmarried, then by the father and mother, or if either be dead, then the survivor.

It manifestly appears from these provisions—for they apply to the injuries alluded to in section 3, as well as to those in section 2—that it must have been in the mind and intention of the legislature only to confer upon the above classes of persons the right to sue in cases where the husband, wife or child could have sued, had not death been the result of the injury.

If the suit is instituted by the husband for the death of the wife, he would be required to allege and prove the fact that at the time the injury was received, occasioning the death, he was her husband, before he would be entitled to recover. This would be the initial and necessary step, in the case; for he might prove by a thousand witnesses the death and the occasion of it, yet it would avail him nothing unless the relationship of husband and wife was established. If the words "any person" in the act are to be construed as including servants, then the inconsistent if not absurd conclusion follows that although under the common law

rule the master has committed no wrong against the servant, has violated no law, and done nothing which imposes upon him a legal liability to answer in damages an action brought by the servant himself, yet upon *his* death a cause of action which never before had an existence, is at once developed and brought to light, and is lodged in the representatives of the deceased. Not only is the above conclusion involved in the construction contended for by plaintiff, but also the further conclusion that the party receiving the injury, if he lives, say one year, may himself sue and recover, for the injury inflicted upon him, damages in any amount which the jury trying the case may give under the facts of the case, and if death afterwards ensues from the injury, his representatives may sue under section 2 of the statute, and recover an additional sum of $5,000, thus holding the party liable in two actions to *two different parties* for the *same wrong*.

Inasmuch, therefore, as the literal meaning of the words " any person," as contended for by plaintiff, is at war with the evident intent of the act, and develop the incongruities and inconsistencies above referred to, we think they should be restricted in their literal meaning, if by so restricting them the various sections are made to harmonize in their intent, and reasonable instead of unreasonable conclusions made to follow.

Restricting the meaning of the words " any person," and making them apply only to such persons as are included in section 3, accomplishes this result and relieves the whole question of all difficulty, and makes sections 2 and 3 harmonious in intent. If the statute should be thus read, the representatives of such a person as is described in section 3, dying from an injury received while the railroad was being operated, either from the carelessness of the servants engaged in operating it, or in case of a passenger, from an injury received because of defective road or machinery, would be entitled to recover $5,000 as damages liquidated by the terms of the act, the only difference between sections 2 and 3, being, that when the death is occasioned by any of the means specified in section 2, the representative to whom the right of action is transmitted shall recover $5,000, no more and no less ; whereas, under sections 3 and 4, the representative to whom the

right of action is transmitted, may recover from one cent to $5,000. In the one class of transmitted rights, the law absolutely fixes the amount at $5,000. In the other the amount of damages is left to the discretion of the jury, to be fixed at any sum not exceeding $5,000, according to the circumstances of the case.

In the case of Rohback vs. Pac. R. R. Co., the words " any person," in a similar statute to the one now before the court, were restricted in their meaning and held to include any person, except a servant or employee of the road, and the same license is allowed in this case as was properly taken in that case.

It is, however said, as opposed to the view expressed herein, that the second clause of the second section creates a cause of action which did not exist before, in providing that in the event of the death of any passenger occasioned by any defect or insufficiency in any railroad or any part thereof, or in any locomotive or car, the corporation in whose employ any such officer or agent shall be at the time the injury is received, or who owns any such railroad, locomotive or car, at the time the injury is committed, shall forfeit and pay the sum of five thousand dollars.

It is said that under this clause the owner of such railroad locomotive or car, may be sued, as contradistinguished from the corporation in whose employ the officer, agent or servant was at the time the injury was committed, which could not be done at common law.

We think that this view is erroneous, and that the word " owner " in this section is used in the sense of proprietor, operator or owner, at the time being when the injury is received. To give it any other meaning would be equivalent to denying any remedy, and would render the remedy intended to be provided, absolutely unavailable. In order that this may appear, it needs but a careful reading of the section, and to read it correctly so as to reach the true meaning, it must be transposed. Transposing the section, it will read thus : " Whenever any person shall die from any injury resulting from or occasioned by the negligence unskillfulness or criminal intent of any officer, agent, servant or employe, whilst running, conducting or managing any locomotive,

.car, or train of cars,   *   *   *   the corporation in whose em-
ploy any such officer, agent or employe shall be at the time such
injury is committed, shall forfeit and pay for every such person
so dying the sum of five thousand dollars ; and when any passen-
ger shall die from any injury resulting from or occasioned by any
defect or insufficiency in any railroad or any part thereof, or in
any locomotive or car, the corporation who (which) owns any such
railroad, locomotive or car, at the time such injury is received,
resulting from or occasioned by any defect or deficiency above de-
clared, shall forfeit and pay for every passenger so dying, the
sum of five thousand dollars."

The above method of reading the section is obviously the cor-
rect method, and we cannot see that it can be read in any other
manner.   Adopting this reading. and the owner of the defective
railroad, locomotive or cars, at the time the injury is inflicted,
from which death ensues, becomes liable to pay the sum of five
thousand dollars.

The word "owner" in the act does not mean the absolute
owner in whom the absolute right of property is invested, but
means, and was evidently intended by the draftsmen of the act
to mean the owner for the time being, the corporation for the
time being, operating, controlling and managing the defective
road, locomotive or car.   No new right of action is created here,
for the passenger, if he had been injured, and lived, could, at
common law, have sued the owner for the time being, or the cor-
poration operating and controlling the defective road, locomotive
or car.   Any other reading or construction of this section, so as
to confine the right of action for the death of a passenger, occa-
sioned by a defect in the road or locomotive or cars, against the
absolute owner of such railroad, locomotive or cars, would lead
to the abolishment of the remedy, and the nullification of the act,
so far as the remedy is concerned.

Let us test this by an example :  A machinist in New York, en-
gaged in the manufacture of locomotives and cars, hires or leases
all the cars and locomotives to the Missouri Pacific Railroad
Company which are necessary to operate the road for a period of
twenty-five years, at an annual hiring.  An injury is inflicted

upon a passenger from a defect in one of these locomotives, while being operated by this company, from which the passenger dies ; if the representatives of the deceased are to sue the owner in New York, could he not reply and say that it was no fault of his which occasioned the injury ; that the locomotive was perfect and complete when it left his hands for the use of the corporation, and that your statute has no extra-territorial vigor, and thus defeat a recovery ?   And if the corporation operating the locomotive and the owner of it at the time the injury was committed, were sued, would the corporation be allowed to answer the action by saying that the owner of the defective machinery lived in New York, and thus remit plaintiff to an action against him ?   The refutation of such a proposition is found in the statement of it.   Nor would it be an answer to say that the interest of the New York owner might be attached and sold ; for in twenty-five years his interest would perish in the use of it, and amount to nothing.

This reading of the section also conclusively refutes the interpretation or meaning given by plaintiff to the words "any person," in the first clause of the second section.

According to the plaintiff's interpretation of these words, the representatives of a fellow servant, injured by the negligence of a fellow servant, while engaged in running and operating the road, without any fault of the master, could sue and recover against the master five thousand dollars, although the servant, had he lived, could not have sued at all for the injury ; yet the representative of the servant whose death was occasioned by defective track or defective machinery, could not sue for and recover anything under the second section, although the servant, had he lived, could have sued the master and have recovered any damage which he may have sustained by reason of an injury inflicted upon him in consequence of a defective road or defective machinery used in operating it.

It seems to us to be a manifest misinterpretation of the second section to construe it so as to say that the legislature in the first clause intended to give the representatives of a servant, who would have had no cause of action had he lived, a right to sue and recover five thousand dollars, and in the second clause of the

same section denied to the representative of a servant, who would have had a cause of action had he lived, the right to sue and recover damages under that section. And the fact that in the second clause of this section, the legislature, by not extending the right, did deny the right of the representative of a servant, dying from an injury received from a defective road or machinery, to sue and recover under that section, is conclusive proof that they did not intend to include, under the term "any person," a fellow servant injured by the negligence of a fellow servant, without fault of the master.

In the case of Schultz vs. Pacific Railroad (36 Mo. 18), a different conclusion was reached from that herein announced. We do not think that the rule was correctly laid down in that case, and have arrived at the conclusions we have after careful deliberation, believing them to embody the true intent of the act, the construction of which was involved. (Potter's Dwarris on Stat. 196, 217 ; 52 Pa. 391 ; Phillips vs. Saunders, 15 Ga. 518 ; Noe vs. The People, 39 Ill. 96.)

In addition to what is here said, we adopt the reasoning of a minority of the court in the case of Connor vs. Chicago, Rock Island & Pacific Railroad Company (59 Mo. 285). We think that the court committed error in overruling the objections of defendant to the evidence offered in support of the petition, and that it ought not to have been received for the reasons assigned by defendant, which are copied in a previous part of this opinion. The judgment is reversed, in which Judges Sherwood, Napton and Hough concur.

PER HENRY, J. DISSENTING.

This was an action commenced by plaintiff under the second section of the Damage Act, to recover the penalty of five thousand dollars for the death of her husband, caused by the negligence and unskillfulness of the officers, servants, agents and employees of the defendant, who were fellow-servants of deceased ; and the only question for consideration is, whether she is entitled to recover under that section.

In the case of Schultz vs. The Pacific Railroad (36 Mo. 13) it was held that that section gave an action to the widow of an employee, whose death was occasioned by the carelessness or negligence of a fellow-servant.

It is insisted that the construction placed upon that section by the court in that case is wrong, and we have listened to many and very able arguments in favor of a different construction. That section is as follows : "Whenever any person shall die from an injury resulting from or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car or train of cars, or of any master, pilot, engineer, agent or employee, whilst running, conducting or managing any steamboat or any of the machinery thereof ; or of any driver of any stage coach or other public conveyance, whilst in charge of the same as a driver ; and when any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad or any part thereof, or in any locomotive or car, or in any steamboat or the machinery thereof, or in any stage coach, or other public conveyance, the corporation, individual or individuals, in whose employ any such officer, agent, servant, employee, master, pilot, engineer or driver shall be at the time such injury is committed, or who owns any such railroad, locomotive, car, stage coach, or other public conveyance at the time any injury is received, resulting from or occasioned by any defect or insufficiency above declared, shall forfeit and pay for every person or passenger so dying, the sum of five thousand dollars, which may be sued for and recovered : first, by the husband or wife of the deceased ; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased ; or, third, if such deceased be a minor and unmarried, then by the father and mother, who may join in the suit, and each shall have an equal interest in the judgment ; or, if either of them be dead, then by the survivor. In suits instituted under this section, it shall be competent for the defendant, for his defense, to show that the

defect or insufficiency named in this section was not of a negligent defect or insufficiency."

The second section does not pretend to, nor does it effect any change of the common law, as to the liability of the master to the servant for injuries sustained by the latter from the neglect or carelessness of a fellow-servant. Neither the Schultz case, nor any other case in this State, has given that effect to the second section. It leaves the common law rule in full force, but if the Schultz case was rightly decided, gives the wife an action in the event of the death of the husband, which neither she, nor any one else had at common law. It derogates from the common law in giving an action to representatives of a decedent, when at common law they had none.

It is urged that the object of the second and third sections was the same, and that the third section is a key to the intent and meaning of the second. The third section is as follows : "Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, default or neglect is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured."

The fourth section provides for the recovery of the damages in the third section, by the same parties and in the same manner as provided in the second section, and that the jury may give such damages as they may deem fair and just, not exceeding $5,000, "with reference to the necessary injury, resulting from such death, to the surviving parties who may be entitled to sue, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default."

The second section is penal in its character : The words "forfeit and pay" are punitive. The third section is compensative : "Shall maintain an action and recover damages in respect thereof." The third section was adopted with no other view than to give an action to the representatives named therein, in a case

where the deceased person could have recovered for the injury if he had lived. As to those cases it simply repealed the common law expressed in the maxim, "*Actio personalis moritur cum persona.*" It gives no cause of action when the deceased, if he had lived, would have had none. And neither, it is said, does the second section. "It is evident to my mind, from the whole scope of the damage act, that the purpose of the legislature in the second section was simply to cause those actions to survive to certain representatives of the deceased in the cases therein named, which according to the rules of the common law died with the person, and to limit the amount of the recovery in such cases. No new right of action is given by the third section ; no new right of action is given to passsegers or strangers, in the second section. That is to say the right of action which the passenger himself, or a stranger, would have had if injured but not killed, is made, in the event of death, to survive." (Hough J., in the case of Connor vs. Chicago, Rock Island and Pacific R. R. Co., 59 Mo. 308.)

With due deference to the learned judge, for whose opinion we have the highest respect, we think that the second section does give to the representatives of the deceased named therein, an action against parties between whom and the deceased there was no privity, and against whom, at common law, he could not have maintained an action, if he had lived. It gives an action to his representatives when the death of the passenger resulted from any defect or insufficiency in any of the vehicles therein named, against the owner, although the owner may not have been concerned in operating the railroad or running the steamboat, stage, coach or other public conveyance.

It cannot be maintained, that by the word "owner" was meant the company or persons operating the road, etc. The section distinguishes between them by providing that the action by representatives of persons included in the first member of the section, may be maintained against the individuals or corporation in whose employ such agent, officer, etc., shall be at the time, and that the representatives of a passenger shall have an action against the owner of such railroad, etc.

9—VOL. LXIV.

As expressed by Holmes, J., in the Schultz case : "When the liability of the employer is declared, in reference to the first clause, it is the corporation or individuals in whose employ such officer, agent, servant or employee shall be at the time the injury is committed, that is to be liable, and plainly in respect of the negligence, unskillfulness or criminal intent of such officer, agent or employee, whilst running, conducting or managing the engine, cars or trains, but when the other clause, relating to passengers only, becomes the subject of the sentence, it is the corporation or individual who owns the railroad, locomotive, car or train in which the defect or insufficiency, which is the ground of liability, may exist, that is declared to be liable."

It gives no action to the representatives of one killed in consequence of defective vehicles, against the operator, unless he also be the owner, while the third section gives no action to the representatives against the owner, but only against the operator, when the deceased would have had an action had he lived.

As between the passenger and the company or persons operating the road, for an injury resulting from defective machinery, he has his common law action, or if he die of the injury, his representatives have an action under the third section, because the deceased, if he had lived, would have had an action at common law. The third section completely accomplishes the purpose of its enactment, which was to prevent the abatement of common causes of action ; and the fact that it refers, for convenience, to so much of the second section as provides who may sue, affords no foundation whatever for the position that it is the key to the construction of the second section. If it had embodied in terms that portion of the second section providing who may sue and all of the fourth section, it would have been complete and perfect in itself, and carried out what may be fairly regarded as the legislative intent on that subject. If the fourth section had been entirely omitted from the statute, and the third section had contained that part of the second section above indicated, it would have been complete, for the representatives would then have had an action, and there would have been no limit to the damages they might have recovered.

We thus see clearly the purpose of the third section, and think we have shown that, in some important respects, there is a very material difference between the two sections.  While they had one purpose in common, to give a right of action to representatives of deceased persons, the second section had also another object in view.  We have said before, that that section is penal, while the third section is compensative.  The one declares that the company or persons and the owner shall "forfeit and pay," and the other, that the corporation or person "shall be liable to an action for damages."  Common carriers have always been held to a strict responsibility for the safety of goods and passengers carried by them, but since the introduction of means of conveyance by steam has so greatly increased the perils to passengers, the common law liability of common carriers has been found inadequate to hold persons controlling those dangerous means of conveyance to the exercise of due care in their operation and management, and the legislature has deemed it necessary by enactment, penal and otherwise, to compel them to the exercise of care equal to the perils incident to the business they are engaged in.

It is said that the rule of the common law exempting the master from liability to a servant for the carelessness of his fellow servant, is salutary, in conducing to the safety of the traveling public, by making each servant more observant of the conduct of his fellow servant, and more interested to report to the master any misconduct or incapacity of a co-employee, and this is regarded as an argument against the construction of the statute declared in the Schultz case.

We grant that the common law rule may have that effect upon servants, but if so, has it not a corresponding effect to make the master less careful in the selection and oversight of his employees?  It works both ways, if either, and then the second section, leaving the common law intact as between the master and the servant, gives a penalty of $5,000 against the master when a servant is killed by the negligence of a fellow servant.  The common law rule makes the servant more careful and watchful, and the statute makes the master more careful in the selection of

his servant.    Nor does the statute weaken the force of the common law rule upon the conduct of servants.

The servant derived no benefit from the penalty imposed by the statute, and the fact that his wife may get $5,000 for his death is not apt to make him less careful to preserve his life.

There may be exceptional cases, but no man whose mind is in a normal condition would be influenced by that consideration to relax his carefulness to avoid a disaster which might result in his own death.

Another circumstance showing the penal character of the second section is that it fixes the amount of the recovery, inflexibly, at $5,000.

A man may be a vagabond, a curse, instead of a comfort to his family, consuming the earnings of his wife and children in debauchery, and disgracing them by his indecency and dissipation, yet if killed under the circumstances bringing the case under the second section, his representatives recover $5,000, and the jury can give no less.

If, on the other hand, the person killed be an honor and comfort to his family, earning thousands by his industry and spending it liberally for their benefit, his representatives can recover but $5,000, while under the third and fourth sections the jury can consider the character of the deceased in determining what amount to allow within the maximum.

If we divide the two members of the second section and make each complete in itself, by appropriating to each member the language of the section applicable to it alone, without adding or striking out a word, the proper construction of the section will be more readily perceived.

The learned judge who delivered the opinion of the court in Connor vs. Chicago, Rock Island & Pac. R. R. Co. says : " The interpretation of the second section advanced in the Schultz case, enlarges the rights of the employees under the first clause, and abolishes the distinction between them and passengers, but destroys their right under the second clause, where passengers only are named, and where the employees of the company, under the law as it existed before the passage of the act, were con-

ceded to have a right of action, and where passengers also clearly had always a right of action apart from any legislative enactment. This seems strange in a law supposed and asserted to have had in view a change of the law as established in the case of McDermot vs. Pac. R. R. (30 Mo. 115.) Now in that case and in all cases that have followed (and they have been numerous) the right of an employee (as well as passenger) to recover for injuries occasioned by defective machinery, etc., is conceded. But adopting the literal interpretation of the second section as given in the case of Schultz, as the word ' passenger' alone is used in the second clause, this right of the employee is destroyed so far as his representatives are concerned, in the event of his death." We submit with due deference to the great learning and ability of the distinguished judge that this is a misconception of the statute. It destroys no right whatever. In giving the representatives of a passenger an action against the owner of the vehicle, it takes away no right of action that he had at common law against the company or person running it. What right of the representative of a servant is destroyed ?

The representative had no right until the section gave it, and giving representatives of a passenger an action not before maintainable, certainly deprives no one of a right of action because he is not also provided for. That section leaves the servant, as it does the passenger, his common law action against the master for injury sustained in consequence of defective machinery. We are at a loss to comprehend how a literal construction of the statute destroys any right of action, that either a servant, or passenger, could have maintained at common law.

If the construction contended for by appellant be the true one, then all of the second section is nugatory and tautological, except that portion of the section prescribing who shall sue, and the amount of the recovery, all of which could have been incorporated in the fourth section as well thus :

"All damages accruing under the last preceding section (3rd) shall be sued for and recovered ; first, by the husband and wife of the deceased ; or second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by

the minor child, or children of the deceased ; or third, if such deceased be a minor and unmarried, then by the father and mother who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor, and in every such action, except as hereinafter provided, the jury may give such damages as they may deem fair and just, not exceeding five thousand dollars, with reference to the necessary injury resulting from such death to the surviving parties who may be entitled to sue, and also having due regard to the aggravating or mitigating circumstances attending such wrongful act, neglect or default; provided that in suits instituted under the foregoing section, for the death of a party occasioned by the neglect, carelessness or criminal intent of officers, agents, or employees, or of defective machinery or vehicles of common carriers of passengers the representatives shall recover, if at all, $5,000." We omit all of the last sentence of the third section, because that is wholly unnecessary in the view of the statute taken by appellant.

If the section, as we have written it, would have accomplished all that is accomplished by the second, third and fourth sections as they now stand, it is an irresistible argument that something more was meant by the legislature in the enactment of the second section than to revive suits and fix the amount of recovery.

The construction contended for by appellant would make the first and second members of that section unmeaning verbiage, or senseless tautology ; and if the ordinary meaning of the words employed will disclose another intent than that to be found in the other sections of the act, that meaning must be given to the words rather than declare that a legislative enactment is without meaning.

But it is said, if one be injured and sue and recover damages at common law and afterwards die of the injury, his representatives can then sue and recover the penalty, if the Schultz case properly construed section two. I confess that I cannot comprehend the argument. It is conceded that the words " any person " in that section include passengers, and we are not called upon in this case to determine whether, if the passenger or servant sue for his injury and then die, his representatives can then sue for the pen-

alty.   So far as the servant is concerned, if the circumstances un-
der which he was injured were such that he could sue for an in-
jury sustained in consequence of the neglect of a fellow-servant,
at common law his representatives would occupy precisely the
same ground as those of a passenger, so far as this section is
concerned.

With regard to injuries received by the servant in consequence
of mere carelessness and negligence of a fellow-servant, the sec-
ond section gives the injured servant no action whatever, and the
case supposed could no more occur in the case of a servant than
in the case of a passenger, who it is admitted, is included in the
words "any person."   It might be argued, that the right of the
representatives to sue in cases where, if the deceased had lived,
he could have sued, is a transmitted right, but the right of a rep-
resentative of a servant to sue unless the injury were such that at
common law the servant himself could have sued, is not a trans-
mitted right.   It is a right created by the statute, in favor of the
representatives of the deceased, and the penalty might have been
given as well to an informer, and then there would have been no
controversy as to the meaning of the section.

So in the case of a passenger killed in consequence of defective
machinery, as he, if he had lived, could have had no suit against
the owner, but only the operator, the right given to his represen-
tatives against the owner is not a transmitted right.

Many hard cases, characterized as absurd, are mentioned as un-
provided for by the statute.   As an instance, a servant injured
but not killed by the negligence of a fellow-servant can have no
action against the master, although he may be maimed for life
and rendered a charge upon his family ; yet if he die the repre-
sentatives can recover $5,000, and it is urged that such could
not have been the intent of the statute.   That the statute does not
provide for all cases which we may think should have been in-
cluded, is certainly no reason for the determining that it does not
embrace the cases which are within its terms.

The legislature may have thought best to have the common law
rule in force as to the *servant himself*, but we cannot see that it
therefore follows, that his representatives should not have an ac-

tion for his death, when the language of the law is broad enough to give it.

If there were anything in the second, or any other section of the act restricting the meaning of the " any person," to the exclusion of servants, this court, we presume, would not hesitate to give it that construction.

If any were necessary, the authorities as to the duty of courts in construing obscure or ambiguous statutes to reject or supply words, in cases where it becomes necessary to do so in order to make them intelligible and to effectuate the obvious intent of the law maker are ample to sustain the position of appellant's counsel, but in my judgment there is no such obscurity or ambiguity in the second section as will authorize the court to reject " the plain, ordinary, or usual sense " of the words " any person " occurring in that section.

The act was passed in 1855. The Schultz case was determined by this court in 1865. Rohback vs. The Pacific R. R., 43 Mo. was decided in 1869. The construction placed upon that section, in the Schultz case, was never questioned until the case of Connor vs. Chicago, R. I. & Pac. R. R. Co. was before this court in 1875.

If the second section was in fact as ambiguous as is urged, and the construction placed upon it wrong, yet the acquiescence of the bar, of the court and of the general assembly in that construction for such length of time, is a consideration which should make the court hesitate to adopt a different one. The general assembly of the State has met every year, in regular, adjourned, or called sessions since the decision in the Schultz case, and no proposition, so far as we are advised has ever been made in that body to amend the law ; and while that decision was not strictly made a rule of property, yet the doctrine of that case has so long prevailed as to become the recognized law of the land, and if it work any injustice, or contravene public policy, it is better for the legislature to remedy the evil by amending or repealing the law, than for this court to do it by judicial construction.

As the instructions given by the court for the plaintiff were in accordance with the doctrine of the Schultz case, I think that the judgment of the circuit court should be affirmed.