Helm, J.
Counsel for both parties in this case concede the common law doctrine that “ The servant assumes all the ordinary risks of the service upon which he enters, including those risks which arise from the negligence of other servants of the same master in the same employment.” Dillon v. U. P. R. R. Co., 3 Dillon C. C. R., 320.
This general doctrine is 'not without qualifications, but it is unnecessary for us to consider, at this time, any of these qualifications, save the one which it is claimed our statute imposes. Neither is it necessary for us to discuss the various reasons existing in favor of the general rule or doctrine. These reasons will be found clearly and concisely stated in Colorado Central R. R. Co. v. Ogden, 3 Colo., 499.
The statute above mentioned is section 1 of an act concerning damages (G. L. of Colo., p. 342), which reads as follows:
“Whenever any person shall die from an injury resulting from, or occasioned by, the negligence, unskillfulness, or criminal intent of any officer, agent, servant or employee, while *75 running, conducting or managing any locomotive, car or train of cars, or of any driver of any coach or public conveyance whilst in charge of the same as driver, and when any passenger shall die from any injury resulting from, or occasioned by, any defect or insufficiency in any railroad or any part thereof, or in any locomotive or car, or in any stage coach or other public conveyance, the corporation, individual or individuals in whose employ any such officer, agent, servant, employee, master, pilot, engineer or driver shall be at the time such injury is committed, or who owns any such railroad, locomotive, car, stage coach or other public conveyance at the time any such injury is received, and resulting from, or occasioned by, defect or insufficiency above described, shall forfeit and pay for every person and passenger so injured the sum of not exceeding five thousand (5,000) dollars, and not less than three thousand (3,000) dollars, which may be sued for and recovered,” etc.
The Court below tried the case upon the theory that the common law rule above stated is partially abrogated by the foregoing statute, and that the words “any person,” used therein, include servants and employees; that when the employee of a common carrier loses his life through the negligence of a co-employee, the employer or master is liable to the persons designated by statute, regardless of the care used by him in the selection of his employees or servants.
The act contains four other sections, but there is nothing therein giving a right of action for such injuries to the employee himself, if he survive the same. The position of ap-pellee and the Court below, therefore, is, that the Legislature intended to say that^the common law rule depriving the employee injured, himself, of any remedy, unless his case be covered by one of the exceptions, shall remain in force; but that if he die from the injury, a right of action in favor of some third person shall spring into existence; that though he be rendered a helpless cripple and invalid, and a burden and expense to his friends, through the negligence of a co-employee, still he shall have no right of action against his employer; while if he be instantly killed, his widow or heirs may recover $5,000 from such employer. The Legislature had the power to create this distinction, but their intent to do so should appear clearly from the context of the act itself; for if there be doubt about it, and the statute will bear another reasonable *76 interpretation, one which is not in conflict with the common law, the latter should be adopted.
The first section, above quoted, may be divided, with reference to the individual injured, into two parts; first, where any person dies from an injury caused by the negligence, un-skillfulness or criminal intent of an officer, servant or employee; and secondly, where the death of a passenger is occasioned by a defect or insufficiency of a railroad, locomotive, car, stage coach or other public conveyance.
It would not be contended that the word passenger included employees, although they are upon the defective car or conveyance, and receive fatal injuries through such defect. Why should the Legislature discriminate between the two causes of death? Why should they say that a right of action shall be given to the widow when death results from the negligence of a fellow servant, but deny the same when it is due to defects in the car or conveyance upon which the servant is compelled to ride? The employer or master is no more at fault in one case than in the other. His responsibility and liability are in law no greater in the choosing of competent and careful servants, than they are in the selection and purchase of safe machinery and appliances.
It cannot be said that the use of the word owns in connection with the latter cause of injury creates a liability in some third party; that it refers to the owner of the defective car although he have nothing whatever to do with the operation of the road, or management of the business. See Proctor v. Han. & St. Joe R. R. Co., 64 Mo., 112.
We do not think the Legislature intended to distinguish in this way between the two sources of injury and death; neither do we think that they intended to discriminate against the party injured should he survive, and in favor of his widow or heir in case of death from the injury. Had it been their intention to make these distinctions, and to abrogate a principle of the common law so universally recognized, they would have voiced that intention in language so plain as to render construction unnecessary.
A careful analysis of the act leads us to the conclusion that it was adopted for .the purpose of preserving or perpetuating *77 certain causes of action after the death of the party entitled thereto in the first instance. That instead of creating a new cause of action, it simply keeps alive a right of action which would else have perished under a familiar rule of the common law, upon the decease of the person injured.
But counsel for appellee ask, if this view be correct, “of what value or necessity is section 2 of this act?” Wejanswer, that the Legislature discriminate between common carriers and other corporations and individuals. They confine section 1 to the former, while section 2 includes the latter. They desired to impose a different liability upon common carriers from that resting upon all other persons, and chose this way of doing it. The common carrier, if liable at all under section 1, must forfeit and pay not less than three thousand, nor more than five thousand dollars; all other persons, natural and artificial, who are guilty of the tortious conduct described in section 2, are liable to actions in damages for any amount from one cent to five thousand dollars. In the former case no “mitigating circumstances” can reduce the amount of the judgment below three thousand dollars; while in the latter, the judgment may be reduced thereby to such nominal sum as will carry the costs.
Our statute seems to have been copied from the Missouri act on the subject of damages; the sections are numbered differently, and vary slightly in the amount to be recovered, but otherwise the language is almost exactly the same in both acts.
In Schultz v. The Pacific R. R., 36 Mo., 13, the Court holds that the words “any person” include employees or servants; in Connor v. Chicago, R. I. & Pac. R. R. Co., 59 Mo., 285, the Court, with one dissenting voice, adhere to the view taken in the Schultz case; but in Proctor v. Hann. & St. Joe R. R. Co., 64 Mo., 112, supra, the Court, one Judge dissenting, overrule the two former cases, and give the construction we have adopted above.
The last of said opinions was rendered at the October term, 1876, but was not officially published in the State Reports until the middle or latter part of 1877. Our Legislature adopted the statute under consideration on the 7th of March, 1877. Counsel for appellee argue that the Proctor opinion *78 could not have been known, or, at least, the presumption is that it was not known to the Legislature of Colorado when they borrowed said act from Missouri; that they must be presumed to have adopted, with the act, the construction thereof given by the Supreme Court of Missouri in the two earlier cases above mentioned; and therefore under a familiar rule of statutory construction, we are bound to adhere to the view taken in those cases.
But in the first place, there is no absolute certainty that the construction given in the Proctor case was unknown to our Legislature on the 7th of March, 1877; and secondly, if it were then unknown to that body, we would not feel under obligation to follow the former opinion. The rule that Courts are bound to adopt the prior judicial construction given a borrowed statute in the State from which it is taken, is not inflexible. Where such construction is clearly erroneous, harsh and oppressive, or where it is inconsistent with the spirit and policy of the laws' of the State borrowing the statute, Courts m^y, and frequently do, decline to follow it. See Freas v. Englebrecht, 3 Colo., 385.
It can hardly be seriously contended that the rule should control in a case like the one at bar, where the Supreme Court has repudiated and abandoned its own construction. The construction announced in the Schultz case prevailed in Missouri for over twelve years; it became a part of the law, and was relied upon as fully as any statutory provision; and the Supreme Court of that State would certainly not have reversed itself hut for an overwhelming conviction that it had committed a serious and palpable error.
The States of Maine and Iowa have statutes upon the same subject as the one under consideration; each of those statutes contains the words “any person” in a connection similar to that in which we have found and considered them; and the Courts of those States have held that such statutes do not include servants of the same master, injured by the negligence of fellow servants while acting in the common employment. State v. Maine R. R. Co., 60 Me., 493; Carle v. Bangor P. C. R. R. Co., 43 Me., 271; Sullivan v. Miss. & Mo. R. R. Co., 11 Iowa, 422.
Thatcher & Gast, for appellant.
Waldron & Player, for appellee.
It is unnecessary for us to consider the assignments of error in detail. The judgment must be reversed and the cause remanded. Reversed.